# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00518-CV
---

**Rosemarie Satterfield, as Representative of the Estate of
Jerrold Braley, Deceased, Appellant**

**v.**

**Crown Cork & Seal Company, Inc., Individually and as Successor to
Mundet Cork Corporation, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN403145, HONORABLE PETER M. LOWRY, JUDGE PRESIDING
---

## O P I N I O N

The issue presented is whether a statute that extinguishes a litigant's right to pursue an accrued and pending common law cause of action—without providing a grace period—transcends the legislature's power. Within that context, does the presumption of a statute's constitutionality survive an express prohibition of the Texas Constitution? Appellant Rosemarie Satterfield, representative of the Estate of Jerrold Braley, seeks damages for injuries that Braley sustained by his exposure to asbestos-containing products. In this appeal, we review the judgment of the district court granting summary judgment to appellee Crown Cork & Seal Company, Inc., pursuant to a newly enacted statute that limits the asbestos-related liabilities of certain successor corporations. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 149.001-.006 (West 2005) (hereinafter "the Statute").

After Braley sued Crown Cork and others for damages caused by his exposure to asbestos-containing products, the trial court granted partial summary judgment in Braley's favor. Within days, the Texas Legislature enacted—and made immediately effective—the Statute, which effectively barred any recovery from Crown Cork.[1]  Crown Cork then filed a motion for summary judgment based on its new statutory affirmative defense under the Statute, arguing that, because it had already paid successor asbestos claims in excess of the liability limit under the Statute, it had no further liability in any asbestos case, including Braley's.  The district court granted the motion and severed Braley's claims against Crown Cork from those against the other defendants.  This appeal followed.

In three issues, Satterfield contends that Crown Cork was not entitled to summary judgment because:  (i) the Statute, which imposes certain limits on the liability of corporations that became successors to corporations that were involved in the asbestos-insulation business, violates the Texas Constitution's prohibition on retroactive laws as applied because it deprives her of all remedy for an accrued and pending cause of action, thereby extinguishing a vested right; (ii) the Statute, on its face, violates the Texas Constitution's prohibition on special laws because it grants special privileges to a particular class for the advancement of private, rather than public, interests; and (iii) Crown Cork failed to conclusively establish as a matter of law the elements of its newly created affirmative defense under the Statute and, therefore, is not entitled to summary judgment. Because the Legislature may not make a law that the Texas Constitution prohibits and the

---

[1]  In response to Satterfield's summary judgment motion, Crown Cork did not contest successor liability as to actual and compensatory damages.  It disputed only any claim as to punitive damages.

Constitution expressly forbids retroactive laws that impair vested rights, the question presented is whether an accrued and pending common law cause of action is a vested right and thus protected by the Texas Constitution. We conclude that it is a vested right and that therefore the Statute is unconstitutional as applied to Braley's claim because, in the absence of a grace period, the Statute is a retroactive law impairing his vested rights.[2]

Accordingly, we sustain Satterfield's first issue, and we reverse the trial court's summary judgment granted in favor of Crown Cork and remand for further proceedings.

## BACKGROUND

*The Parties*

After receiving an honorable discharge from the United States Army in 1956, Jerrold Braley returned to his home in Wyoming but then moved his family to Texas to work as an industrial laborer at an oil refinery near Monahans. Acquiring skills to become a pipefitter and welder's helper, over the next several years Braley worked at refineries, chemical plants, gas plants, and at other industrial job sites in Texas, Wyoming, Oklahoma, Kansas, New Mexico, Florida, and Louisiana. These jobs involved working with pipes, boilers, compressors, and other machinery requiring insulation, which routinely involved asbestos insulation, including asbestos-containing insulation products manufactured by Crown Cork's predecessor—Mundet Cork Corporation. Braley worked until he retired in 1996.

---

[2] In light of our disposition of the challenge to the constitutionality of the Statute as applied, we do not reach Satterfield's remaining issues.

3

Crown Cork is a manufacturer and distributor of packaging products for consumer goods. In 1963, Crown Cork, then a New York corporation, was the nation's largest producer and seller of metal bottle caps, known in the industry as "crowns." Mundet was also a large producer and seller of crowns and consisted of two divisions: the "closure" division, which manufactured crowns, and the "thermal insulation" division, which manufactured, sold, and installed insulation products, some of which contained asbestos. Seeking to acquire the assets of Mundet, in November 1963, Crown Cork purchased the majority of Mundet stock. Approximately three months later, on February 8, 1964, Mundet sold its insulation division to Baldwin-Ehret-Hill ("B-E-H"). It is undisputed in the summary judgment proof that B-E-H expressly agreed to assume only the liabilities of Mundet's thermal insulation division arising after February 8, 1964. Mundet thus retained all liability arising from any exposure to its asbestos-containing products before the date of the asset sale. Crown Cork acquired the remainder of Mundet stock, and the remaining assets of Mundet were transferred to Crown Cork by merger in 1966. In 1989, Crown Cork merged into a new Pennsylvania corporation of the same name.

*The Lawsuit*

In July 2002, Braley was diagnosed with mesothelioma, a fatal form of cancer associated with exposure to asbestos. On October 1, 2002, Braley sued Crown Cork and others[3]

---

[3] In addition to Crown Cork, Braley sued A.W. Chesterton Company; Babcock Borsig Power, Inc.; Coltec Industries, Inc.; Crane Company; Dana Corporation; Durabla Manufacturing Co.; Enpro Industries, Inc.; Exxon Mobil Corp.; Foster Wheeler Energy Corp.; Garock Sealing Technologies, LLC; General Electric Company; Goodrich Corp.; Guard-Line, Inc.; John Crane, Inc.; Metropolitan Life Insurance Company; Northern Natural Gas Co.; Rapid American Corp.; and 3M Company.

for damages caused by his exposure to asbestos-containing products. In his live pleading at the time—Plaintiffs' Fourth Amended Petition and Jury Demand—Braley asserted common law causes of action for negligence and strict products liability. Braley's petition also sought to impose liability against Crown Cork as successor to Mundet. In November, Braley moved for partial summary judgment to establish Crown Cork's liability for Mundet's asbestos-containing products as a result of Crown Cork's acquisition and merger. Arguing that Pennsylvania law controls because it has the most significant relationship to the issue of whether Crown Cork should be liable for Mundet's liabilities, Crown Cork asserted that Texas "has nothing but a tenuous relationship."[4] Crown Cork did not dispute that it was the successor by merger to Mundet and, therefore, liable for Mundet's tortious conduct under Texas law,[5] nor did it dispute that it was liable for actual and compensatory damages attributable to Braley's exposure to Mundet's products.[6]

---

[4] Initially, Crown Cork agreed with Satterfield that Texas law does not apply and that Texas does not have "an interest in the application of its law to the Plaintiff's claim or recovery of damages." According to Crown Cork, "only Pennsylvania has any interest in the outcome of this case." Four days after the trial court granted partial summary judgment in favor of Satterfield on the issue of successor liability, the Legislature changed the law, including the choice-of-law provision. Seizing upon the newly enacted law, Crown Cork moved for summary judgment and argued that Texas law applied.

[5] Contrary to the dissent's assertions, Crown Cork conceded in its motion for summary judgment that, in the absence of the Statute, the "black letter rule in Texas has previously held a successor corporation liable for the torts of a predecessor corporation with which it merged." Thus, Crown Cork did not challenge Satterfield's claim that Crown Cork was liable for the negligent acts of Mundet under a theory of successor liability until after the Legislature enacted the Statute.

[6] Because Mundet sold its insulation division and the acquiring company assumed only those liabilities of the division arising after February 8, 1964, Mundet retained and Crown acquired all liabilities not assumed by the acquiring company—i.e., liabilities arising before February 8, 1964.

5

On May 29, 2003, the trial court entered an order granting Braley's motion for partial summary judgment on the successor liability issue, finding that Crown "is liable for injuries, actual and punitive damages, as may be proven at trial, caused by the asbestos-containing products manufactured, sold or distributed by Mundet[ ] before February 8, 1964, as a result of Crown Cork's[ ] acquisition and merger of Mundet[ ] into Crown Cork." The trial court further found that the judgment "only determines that in the event the jury finds Mundet Cork was negligent, grossly negligent, acted with malice, or its products were defective that Crown Cork is liable and bears the responsibility for the findings against Mundet Cork." Issues of negligence, product defect, gross negligence, and damages remained to be determined by the jury.[7]

***The Statute***

Four days after the trial court granted Braley's motion for partial summary judgment, ruling that Crown Cork was liable as successor to Mundet, the Legislature passed House Bill 4. Act of June 2, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 847. Section 17 of House Bill 4—the Statute—created an affirmative defense to successor liability for asbestos claims by limiting cumulative successor liability to the fair market value of the predecessor company as of the time of the merger or consolidation. *Id*. § 17.01, 2003 Tex. Gen. Laws at 892-95 (codified at Tex. Civ. Prac. & Rem. Code Ann. §§ 149.001-.006 (West 2005)).

The Legislature also specified that the Statute would become "effective immediately" in all cases commenced on or after June 11, 2003, or in all pending cases in which trial, or any new

---

[7] That the causes of action Braley asserted against Crown Cork accrued prior to the Statute's enactment is not in dispute.

6

trial or retrial after motion, appeal or otherwise, has not begun.[8] The Statute was the only section

of House Bill 4 to be made immediately effective. *See id.* § 23.02(b), 2003 Tex. Gen. Laws at 898;

H.J. of Tex., 78th Leg., R.S. 6041-042 (2003); S.J. of Tex., 78th Leg., R.S. 5008 (2003). The Statute

was also the only section of House Bill 4 made retroactively applicable to all cases pending on

its effective date. *See id.* § 17.02(2), 2003 Tex. Gen. Laws at 895. Codified at Chapter 149 of

the Texas Civil Practice & Remedies Code, the Statute is entitled "Limitations in Civil Actions of

Liabilities Relating to Certain Mergers or Consolidations." *See* Tex. Civ. Prac. & Rem. Code Ann.

§§ 149.001-.006.[9] Because this suit was pending on June 11, 2003, and the trial had not started, the

Statute applied to it.

The stated purpose of the Statute is to limit cumulative "successor asbestos-related

liabilities"[10] in Texas. *Id.* §§ 149.001-.002. A successor corporation is liable for asbestos claims[11]

---

[8] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 17.02(2), 2003 Tex. Gen. Laws 847, 895; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 149.001 (West 2005) (referencing historical note that designates June 11, 2003, as Statute's effective date).

[9] Similar legislation passed in Pennsylvania, *see* 15 Pa. Cons. Stat. Ann. § 1929.1 (West 2001), was declared unconstitutional by the Pennsylvania Supreme Court under the open-courts provision of the Pennsylvania Constitution. *See Ieropoli v. AC&S Corp.*, 842 A.2d 919, 930 (Pa. 2004).

[10] "Succesor asbestos-related liabilities" is defined in the Statute as:

any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, that are related in any way to asbestos claims that were assumed or incurred by a corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related to the merger or consolidation, with or into another corporation or that are related in any way to asbestos claims based on the exercise of control or the ownership of stock of the corporation before the merger or consolidation. The term includes liabilities that, after the time of the merger or consolidation for which the fair market value of total gross assets is determined under

7

only up to the total gross assets of the transferor corporation from whom it received the asbestos-related liabilities; total gross assets are determined as of the time of the merger or consolidation. *See id.* § 149.003(a); *see also id.* §§ 149.001(4) (defining "successor" as "a corporation that assumes or incurs, or has assumed or incurred, successor asbestos-related liabilities"); 149.001(5) (defining "transferor" as "a corporation from which successor asbestos-related liabilities are or were assumed or incurred").[12] A successor corporation is not responsible for successor asbestos-related liabilities

---

Section 149.004, were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by a successor of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments, or other discharges in this state or another jurisdiction.

Tex. Civ. Prac. & Rem. Code Ann. § 149.001(3).

[11] An "asbestos claim" is defined in the Statute as:

any claim, wherever or whenever made, for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to asbestos, including:

(A)     property damage caused by the installation, presence, or removal of asbestos;

(B)     the health effects of exposure to asbestos, including any claim for:
    (i)      personal injury or death;
    (ii)     mental or emotional injury;
    (iii)    risk of disease or other injury; or
    (iv)     the costs of medical monitoring or surveillance; and

(C)     any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the person.

*Id.* § 149.001(1).

[12] The Statute provides that a corporation may establish the fair market value of total gross assets by any method reasonable under the circumstances, including (1) by reference to the going concern value of the assets or to the purchase price attributable to or paid for the assets in an arm's-length transaction; or (2) in the absence of other readily available information from which fair market

that exceed this limitation. *Id*. § 149.003(a). The Statute also provides that, if a transferor corporation had assumed or incurred successor asbestos-related liabilities from a prior merger or consolidation with a transferor, then the fair market value of the total assets of the first transferor shall be used to determine the successor corporation's liability. *Id*. § 149.003(b).

The Statute also alters the choice-of-law analysis in successor-liability cases. Courts are required "to the fullest extent permissible" to apply Texas law to successor-related liabilities. *See id*. § 149.006 ("The courts in this state shall apply, to the fullest extent permissible under the United States Constitution, this state's substantive law, including the limitation under this chapter, to the issue of successor asbestos-related liabilities."). Thus, even though the parties had agreed that Texas law did not apply and that the claim would be governed by another state's law under choice-of-law principles, such as the common law "most significant relationship" test, section 149.006 mandates application of the Statute. *See American Home Assurance Co. v. Safway Steel Prods. Co.*, 743 S.W.2d 693, 697 (Tex. App.—Austin 1987, writ denied) (noting that courts do not resort to "most significant relationship" analysis when there is "a local statutory provision controlling the disposition of the choice of law question"); Restatement (Second) of Conflict of Laws § 6(1) & cmts. a, b (1971) (directing court, subject to constitutional restrictions, to follow statutory directive of its own state on choice of law).

---

value can be determined, by reference to the value of the assets recorded on a balance sheet. *Id.* § 149.004(a) (West 2005). The fair market value of total gross assets may not reflect a deduction for any liabilities arising from any asbestos claim. *See id.* § 149.004(d). The fair market value at the time of the merger or consolidation is then adjusted as provided for inflation. *See id.* § 149.005 (West 2005).

9

*The Trial Court's Judgment*

The next month—one year from his date of diagnosis—Braley died. The representative of his estate, Rosemarie Satterfield, was substituted as plaintiff.

Crown Cork then filed a motion for summary judgment, *see* Tex. R. Civ. P. 166a(c), based on "a newly enacted Texas statute," arguing that asbestos-related liabilities in Texas imposed an "unfair financial burden" on Crown Cork and that because it had already paid successor asbestos claims in excess of the limit of liability under the new statute, it had no further liability in any asbestos case. The trial court granted the motion and severed Satterfield's claims against Crown Cork from those against the other defendants. This appeal followed.

## ANALYSIS

On appeal, Satterfield argues that the summary judgment granted in favor of Crown Cork is based on the retroactive application of an unconstitutional special law. In three issues, she contends that the trial court erred in granting Crown Cork's motion for summary judgment because (i) the Statute violates the Texas Constitution's prohibition on retroactive laws by depriving her of all remedy for an accrued and pending cause of action, thereby extinguishing a vested right; (ii) the Statute violates the Texas Constitution's prohibition on special laws because it grants special privileges to a particular class for the advancement of private, rather than public, interests; and (iii) Crown Cork failed to establish, as a matter of law, the elements of its newly created affirmative defense under the Statute and is therefore not entitled to summary judgment.

Crown Cork responds that (i) Satterfield has not defeated the presumption that chapter 149 is constitutional; (ii) Satterfield's "individual rights must yield to the State's valid

10

exercise of police power in enacting legislation designed to protect innocent successor corporations"

from bankruptcy; (iii) the Statute is not a special law because it includes a substantial class of

corporations to which the Statute would apply and the classifications within the Statute are

reasonable; and (iv) it met its summary judgment burden by establishing each element of its

affirmative defense accorded by the Statute.

### *Standard of Review*

Our review of the district court's decision to grant summary judgment is de novo.

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Summary judgment under

rule 166a(c) is proper when a movant establishes that there is no genuine issue of material fact

and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's*

*Food Mkts., Inc.v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A defendant, as movant, can satisfy

this burden if the evidence disproves as a matter of law at least one element of each of the plaintiff's

causes of action or if the evidence conclusively establishes all elements of an affirmative defense.

*Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 843 (Tex. 2005); *American Tobacco Co.*

*v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). In deciding whether there is a disputed issue of

material fact precluding summary judgment, we take evidence favorable to the nonmovant as true,

indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the

nonmovant's favor. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001).

As the party seeking summary judgment below, Crown Cork had the burden

of establishing each element of its statutory affirmative defense as a matter of law. *McIntyre*

*v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003). Satterfield responded to Crown Cork's motion both

by seeking to raise issues of material fact as to whether Crown Cork established all the elements of its statutory affirmative defense and by challenging the Statute on constitutional grounds. Because Satterfield's challenge to the Statute as an unconstitutional retroactive law is an as-applied challenge, she must demonstrate that the Statute is unconstitutional under article I, section 16 of the Texas Constitution as applied to Braley's claims, or that it is an unconstitutional special law under article III, section 56 of the constitution, or that she has raised a fact issue about whether Crown Cork has conclusively established its statutory affirmative defense. *See* Tex. Const. arts. I, § 16; III, § 56; *see also Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n. 16, 520 (Tex. 1995) (in "as applied" challenge, plaintiff must show that "statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances").

***Does the Statute Violate the Texas Constitution's Prohibition on Retroactive Laws?***

The Legislature may not make a law prohibited by the constitution of the state or that of the United States. *See, e.g.*, *Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962); *State v. Brownson*, 61 S.W. 114, 114 (Tex. 1901). And the courts may not question the wisdom of a constitutional provision. *Cramer v. Sheppard*, 167 S.W.2d 147, 154 (Tex. 1942).

### 1. The Texas Constitution expressly prohibits retroactive laws.

In her first issue, Satterfield contends that the Statute violates article I, section 16 of the Texas Constitution prohibiting the enactment of retroactive laws. That section provides:

> No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

12

Tex. Const. art. I, § 16.  Satterfield contends that section 16 bars retroactive legislation that extinguishes or "impairs vested rights acquired under existing law."  *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002); *Ex parte Abell*, 613 S.W.2d 255, 260 (Tex. 1981); *Bailey v. City of Austin*, 972 S.W.2d 180, 191 (Tex. App.—Austin 1998, pet. denied).  She urges that an accrued and pending cause of action is a vested right that may not retroactively be eliminated.  She asserts that her accrued common law claims for negligence and strict products liability were vested before the Statute became effective and, therefore, could not be extinguished by subsequently enacted legislation.[13]

We begin our analysis with the presumption that the Statute is constitutional and that the party challenging its constitutionality bears the burden of demonstrating that it fails to satisfy constitutional requirements.  *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996); *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989).  It does not follow, however, that what the Legislature can legislate prospectively, it can legislate retroactively.  *See* Tex. Const. art. I, §§ 16, 29.  That the Constitution has taken certain legislation out of the hands of the Legislature due to its retroactive effect is clear.  *Id.*  The issue, then, is the breadth of that constitutional prohibition.

"In considering this question, then, we must never forget, that it is a constitution we are expounding"[14]—here, the Texas Constitution.  In construing the Texas Constitution,

---

[13]  Satterfield's challenge to the retroactive application of the Statute is an "as applied" challenge; she thus claims that the Statute, although it may be otherwise constitutional, operates unconstitutionally as to the circumstances of this case and Braley's common law tort claims.

[14]  *McCulloch v. Maryland*, 17 U.S. 316, 407 (1819).

> [W]e consider "the intent of the people who adopted it." In determining that intent, "the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are proper subjects of the inquiry." However, because of the difficulties inherent in determining the intent of voters over a century ago, we rely heavily on the literal text.

*Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex. 1989) (citations omitted); *see also City of Sherman v. Henry*, 928 S.W.2d 464, 472 (Tex. 1996); *Ex parte Tucci*, 859 S.W.2d 1, 18 (Tex. 1993) (Phillips, C.J., concurring); *Davenport v. Garcia*, 834 S.W.2d 4, 19 (Tex. 1992).

A "constitution" has been defined as a "charter of government deriving its whole authority from the governed." *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 91 (Tex. 1997) (quoting Black's Law Dictionary 311 (6th ed. 1990)). It is a compact between the government and the people in which the people delegate powers to the government and in which the powers of the government are prescribed. *Id.* (citing *The Origins of the American Constitution: A Documentary History* ix (Michael G. Kammen ed., 1986)). By design, the framers of the Texas Constitution determined the constitution was to be a compact between the government and its citizens. Tex. Const. art. I, § 2 ("All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit."); *Republican Party*, 940 S.W.2d at 91 n.6.

The guiding principle of construing a constitution is to ascertain and give effect to the intent of the voters who adopted it. *Williams v. Castleman*, 247 S.W. 263, 265 (Tex. 1922); *Cox v. Robison*, 150 S.W. 1149, 1151 (Tex. 1912). The provisions of the Texas Constitution mean what they meant when they were promulgated and adopted, "and it does not lie within the power

14

of the Legislature to change their meaning, or to enact laws in conflict therewith." *Jones v. Ross*, 173 S.W.2d 1022, 1024 (Tex. 1943); *see also Travelers Ins. Co. v. Marshall*, 76 S.W.2d 1007, 1011-12 (Tex. 1934) (meaning of constitution does not change with circumstances to make a different rule in a case seem desirable). As the supreme court stated more recently, "In interpreting the Texas Constitution, Texas courts rely heavily on the literal text and are to give effect to its plain language." *Republican Party*, 940 S.W.2d at 89; *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995).

In a time contemporaneous with the drafting of our constitution, the Texas Supreme Court wrote:

> In the construction of a Constitution, it is to be presumed that the language in which it is written was carefully selected and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions.

*Mellinger v. City of Houston*, 3 S.W. 249, 252 (Tex. 1887). Like the citizens of other states, citizens of this State adopted state constitutions to restrict governmental power and guarantee individual rights. *See, e.g.*, *LeCroy v. Hanlon*, 713 S.W.2d 335, 339 (Tex. 1986). Adopted in a wholly different historical and conceptual framework than the federal constitution, the Texas Constitution exemplifies a desire to restrict governmental powers. *See id.*; *see also* Tex. Const. art. I, § 29. This Court has "regarded as axiomatic" that "a state constitution is in no manner a grant of power," but instead, operates solely as a limitation of power. *Watts v. Mann*, 187 S.W.2d 917, 923 (Tex. Civ. App.—Austin 1945, writ ref'd); *see also Shepherd*, 363 S.W.2d at 743. All power which is

15

not limited by the constitution inheres in the people, and a legislative act is valid only when the constitution contains no prohibition against it. *Watts*, 187 S.W.2d at 923.

In recent years, a strong resurgence of state constitutional analysis compels us to undertake an analysis of the Texas Constitution each time a provision of that fundamental document is implicated. Our high courts have increasingly looked to the Texas Constitution and particularly its bill of rights to determine its citizens' rights and liberties. While state constitutions cannot subtract from the rights guaranteed by the United States Constitution, state constitutions can, and often do, provide additional rights for their citizens. *See, e.g.*, *Oregon v. Kennedy*, 456 U.S. 667 (1982); *LeCroy*, 713 S.W.2d at 338. We may not allow a statutory provision not within the Legislature's province to override a state constitutional provision or allow the constitutional provision to become meaningless surplusage. We have long recognized the importance of state constitutions in protecting individual rights. When the Legislature has done that which the Bill of Rights forbids, then it becomes the duty of the judiciary to declare such enactments null and void. *See, e.g*, *Bronson v. Kinzie*, 42 U.S. 311 (1843); *Sturges v. Crowninshield*, 17 U.S. 122 (1819). Our duty, then, is to examine the words of the constitution to determine whether a reason exists to defeat the statute's presumption of validity. *See Cox*, 150 S.W. at 1151.

Along with its unique history and "independent vitality," *see LeCroy*, 713 S.W.2d at 339, the Texas Constitution contains singular provisions—sections 16 and 29 of article I—both found in its bill of rights. Tex. Const. art I, §§ 16, 29.

### A.    Article I, Section 16

Unlike the United States Constitution, the Texas Constitution has a specific prohibition against retroactive laws. *Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971). This prohibition is found in the Texas Bill of Rights. *See* Tex. Const. art. I, § 16. Bills of right are often included as part of the compact between governments and citizens and are intended to protect citizens from governmental transgressions of certain fundamental rights. *Republican Party*, 940 S.W.2d at 91 (citing Thomas M. Cooley, LL.D., *A Treatise on the Constitutional Limitations which Rest Upon the Legislative Power of the States of the American Union* 176 (1868); 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 2-3 (1977)). Significantly, the Texas Bill of Rights appears in article I of the Texas Constitution. Tex. Const. art. I. When the authors of the 1876 Texas Constitution recommended its ratification, they assured citizens that each citizen's liberty would be protected by every safeguard known to constitutional law, and that the government of the state was restored to its people.

Some state constitutions and bills of rights provisions confer guarantees more extensive than those in the federal constitution. *Compare* U.S. Const. art. I, § 9, cl.3 (prohibiting Congress from passing a bill of attainder or ex post facto law) *and id.* art. I, § 10 (prohibiting the states from enacting bills of attainder, ex post facto laws, or laws impairing the obligation of contracts) *with* Tex. Const. art. I, § 16 (prohibiting bills of attainder, ex post facto law, any law

17

impairing the obligation of contracts *as well as retroactive laws*);[15] *see also Mellinger*, 3 S.W. at 252 (article I, section 16 of Texas Constitution gives protection the U.S. Constitution does not). The Texas Constitution has long been recognized "to possess independent vitality, separate and apart from the guarantees provided by the United States Constitution." *City of Sherman*, 928 S.W.2d at 473; *In the Interest of J.W.T.*, 872 S.W.2d 189, 197 (Tex. 1994); *LeCroy*, 713 S.W.2d at 339. Thus, it is no surprise that the Texas Supreme Court concluded long ago that article I, section 16 of the Texas Constitution gives additional protection against retroactive lawmaking—in the form of an express bar on the passage of any "retroactive law"—not found in the U.S. Constitution. *See Mellinger*, 3 S.W. at 252. In the face of this express constitutional prohibition, little if any presumption of constitutionality remains. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938) (recognizing that scope of constitutional presumption is much narrower when legislation appears on its face to fall within express constitutional prohibition).

In shielding individual rights from the arbitrary enactment of retroactive laws, the supreme court in *Mellinger* honed in on the literal—and "plain"—language of the provision at issue:

> In the construction of a Constitution, it is to be presumed that the language in which it is written was carefully selected and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions; and it can not be presumed that separate and distinct provisions were intended to have the same and no other effect than one of them has, unless the language used, when considered in connection with the whole instrument, shows that this must have been the intention.

---

[15] The United States Constitution expresses concern with retroactive laws through several of its provisions, including the ex post facto and takings clauses. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 533 (1998); *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994).

18

It can not be presumed that in adopting a Constitution which contained a declaration "that no retroactive law shall be made," that it was intended to protect thereby only such rights as were protected by other declarations of the Constitution which forbade the making of ex post facto laws, laws impairing the obligation of contracts, or laws which would deprive a citizen of life, liberty, property, privileges or immunities, otherwise than by due course of the law of the land.

The character of laws which, within the meaning of the Constitution, would operate as ex post facto laws, and laws impairing the obligations of contracts, were well understood, not only from the language descriptive of them used in the Constitution, but from adjudications made by the highest courts in the land, prior to the time the Constitution was adopted; *and there can be no doubt that by the clause in the Constitution which forbids the making of retroactive laws it was intended to give protection to every citizen against the arbitrary exercise of some power not forbidden by the other clauses of the Constitution referred to, which might be lawfully exercised but for this prohibition*.

3 S.W. at 252 (emphasis added).

Retroactive legislation presents problems of unfairness not posed by prospective legislation "because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992); *see also Owens Corning v. Carter*, 997 S.W.2d 560, 572-73 (Tex. 1999) (constitutional prohibition against retroactive laws derives from concepts of fair notice and well-settled expectations). Retroactivity is generally disfavored in the law, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring). In his *Commentaries on the Constitution*, Justice Story reasoned, "[R]etrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." 2 J. Story, *Commentaries on the Constitution* § 1398 (5th ed. 1891). A law

19

that is fundamentally unfair because of its retroactivity is a law which is basically arbitrary. *See, e.g.*, *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 728-30 (1984).

### B.      Article I, Section 29

In addition to section 16, which expressly bars the enactment of retroactive laws, article I of the Texas Constitution contains a specific provision in section 29 "that defines the scope and application of the Texas Bill of Rights." *Republican Party*, 940 S.W.2d at 89. Section 29 is titled "Provisions of Bill of Rights Excepted From Powers of Government; To Forever Remain Inviolate." It does not have a counterpart in the federal constitution. Not addressed by Crown Cork and rendered meaningless by the dissent, section 29 provides:

> Sec. 29. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

Tex. Const. art. I, § 29. Contained in every constitution of the State of Texas, section 29 must be read as an express limitation on state power beyond that set forth in each of the individual rights guaranteed in the Texas Bill of Rights. *See* Tex. Const. of 1869, art. I, § 23; Tex. Const. of 1866, art. I, § 21; Tex. Const. of 1861, art. I, § 21; Tex. Const. of 1845, art. I, § 21. The first clause of section 29 establishes that the purpose of the Texas Bill of Rights is to "guard against transgressions of the high powers" delegated to the state government by the Texas Constitution. Its provisions excepting each right in the Bill of Rights "out of the general powers of government" and providing that "all laws" contrary to the Bill of Rights serve as a shield against the powers and laws of

20

government.  *See Republican Party*, 940 S.W.2d at 89-90; *see also* 1 Braden et al., *The Constitution of the State of Texas*, *supra*, 85-86.  If it is to have meaning, the language of section 29 can only be intended to strengthen—not limit—the other provisions of the Bill of Rights.  In this context, because the Texas Constitution circumscribes the limits of legitimate legislative action, it provides Texas citizens greater protection than that found in the federal constitution.

Under the plain and literal reading of the constitutional text, then, "retroactive laws" shall not be made, and the people of Texas have expressly withheld, "excepted out," and not given the Legislature *any* power to enact retroactive laws.  *See* Tex. Const. art. I, §§ 16, 29.  Contrary to the dissent's suggestion that section 29 is without meaning, Texas courts have attributed significance to this provision when addressed.  *See Republican Party*, 940 S.W.2d at 89-90 (stating that article I, section 29 of the Texas Constitution expressly limits the power of Texas government by excepting everything in the Bill of Rights out of the general powers of government); *City of Beaumont*, 896 S.W.2d at 148-49 (stating that the guarantees found in the Bill of Rights are excepted from the general powers of government and that the state has no power to act in a manner contrary to the Bill of Rights); *Travelers Ins. Co.*, 76 S.W.2d at 1010-11 (holding that Texas Legislature has no police power to violate article I, section 16 of the Texas Constitution because section 29 emphatically and unambiguously excepts this power from the powers of the government of the State of Texas).[16]  By its language in *Mellinger*, the supreme court focused on the importance of the

---

[16] *See also Henderson v. Love*, 181 S.W.3d 810, 815 (Tex. App.—Texarkana 2005, no pet.) (finding that article I, section 29 "expressly limits the state's police power"); *Fazekas v. University of Houston*, 565 S.W.2d 299, 305 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (stating that, although state has broad police power, the Texas Constitution excepts from this power the authority to enact laws contrary to article I, section 16); *Faulk v. Buena Vista Burial Park Ass'n*,

21

prohibition of retroactive laws, as well as giving meaning to each and every provision of the Bill of Rights, including the plain language of section 29. *Mellinger*, 3 S.W. at 252. Indeed, the supreme court has consistently held that courts "should avoid constructions that would render any constitutional provision meaningless or nugatory." *See, e.g.*, *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000); *Hanson v. Jordan*, 198 S.W.2d 262, 263 (Tex. 1946).

Thus, the people of the State of Texas, in plain language set forth in article I, section 29 of the Texas Constitution, have expressly withheld from the Legislature the authority to enact retroactive laws in violation of article I, section 16.

But we acknowledge that a statute operating retrospectively alone is insufficient to invalidate a law. *Texas Water Rights Comm'n*, 464 S.W.2d at 648. Merely because a statute allows consideration of events that occurred prior to its enactment does not compel its invalidation, so long as the affected parties were given a reasonable opportunity to protect their interests. *Id.* It is a well-settled principle in Texas law that retroactive laws are unconstitutional only when they impair or destroy vested rights. *See id.*; *see also City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997); *McCain v. Yost*, 284 S.W.2d 898, 900 (Tex. 1955); *Mellinger*, 3 S.W. at 249. The parties do not dispute that the Statute operates retroactively. Therefore, to determine whether the Statute is an unconstitutional retroactive law, we must consider whether the Statute impairs or destroys Satterfield's vested rights.

---

152 S.W.2d 891, 893-94 (Tex. Civ. App.—El Paso 1941, no writ) (holding police power is restricted by constitutional bill of rights); *Murphy v. Phillips*, 63 S.W.2d 404 (Tex. Civ. App.—San Antonio, 1933, app. dism'd) (police power and resulting civil moratorium statute cannot violate constitutional rights).

22

**2.** **The Statute is an unconstitutional retroactive law because it impairs Satterfield's vested rights and provides no grace period to preserve those rights.**

Crown Cork argues that Satterfield failed to demonstrate that the Statute impairs a vested right and that Satterfield's claim is a statutorily created remedy which may be repealed and is not subject to the prohibition against retroactive lawmaking. Citing *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280 (Tex. Civ. App—Corpus Christi 1975, writ ref'd n.r.e.) and *Dickson v. Navarro County Levee Improvement Dist. No. 3*, 139 S.W.2d 257 (Tex. 1940), Crown Cork urges that Satterfield did not have a vested right because no final judgment had been rendered prior to the passage of the Statute.

The definition of a "vested right" differs from state to state and varies widely even within a state according to its context. Thus, we agree with Crown Cork's general assertions that litigants have no vested rights in new rules of law, a mere expectancy based upon the anticipated continuation of an existing law, or mere remedies. *See City of Dallas v. Trammell*, 101 S.W.2d 1009, 1014 (Tex. 1937). Although Texas courts are split on whether an accrued and pending cause of action is a vested right, all but one of those courts that have analyzed state law, including relevant provisions of the Texas Constitution, have answered that question in the affirmative. *See, e.g.*, *Likes*, 962 S.W.2d at 502 (finding common law cause of action against municipality for negligence was vested right); *Mellinger*, 3 S.W. at 253 (defining vested right as "well-founded claim" deserving of constitutional protection); *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 354 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Mellinger*, 3 S.W. at 253, and defining vested rights as a state of facts, which in the course of time or under given circumstances, becomes

23

fixed or vested by operation of existing law).[17] Under general principles of tort law, a personal injury cause of action—like the causes of action asserted by Satterfield here—accrues when conduct that invades the rights of another has caused injury. *See* Restatement (Second) of Torts §§ 899, 910 (1977). When the injury occurs, the injured party has the right to bring suit for all of the damages, past, present, and future, caused by the defendant's acts. *See id.* The facts and circumstances surrounding Braley's injuries and death occurred well before the Statute was enacted, and Braley had already filed suit on his claims by the date on which the Statute became effective. Thus, Satterfield's cause of action was accrued and pending, or vested, prior to the effective date of the Statute.

Accepting Crown Cork's argument that a right does not become vested unless a final judgment has been rendered, the dissent ignores the significance of these events. But contrary to this argument, neither the Texas Constitution nor the Texas Supreme Court defines a vested right in terms of a final judgment. In *Mellinger*, the supreme court recognized accrued causes of action as a vested right protected by article I, section 16:

> [Article I, section 16] evidences an intention to place a further restriction on the power of the Legislature, and it must be held to protect every right, even though not strictly a right to property, which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right. A right

---

[17] *But see Robinson v. Crown Cork & Seal Co.*, 251 S.W.3d 520 (Tex. App.—Houston [14th Dist.] 2006, pet. filed). While we recognize that our sister court has reached the opposite conclusion in a case involving similar facts, we are not bound to follow the decision of another court of appeals. *See Delamora v. State*, 128 S.W.3d 344, 359 (Tex. App.—Austin 2004, pet. ref'd); *see also Shook v. State*, 244 S.W.2d 220, 221 (Tex. Crim. App. 1951) (court not bound to follow a decision of a court of equal jurisdiction); *Lambert v. Affiliated Foods, Inc.*, 20 S.W.3d 1, 8 (Tex. App.—Amarillo 1999), *aff'd sub nom. Lawrence v. C.D.B. Services Inc.*, 44 S.W.3d 544 (Tex. 2001).

has been well defined to be a well founded claim, and a well founded claim means nothing more nor less than a claim recognized or secured by law. . . .

[I]t must necessarily be held that a right, in a legal sense, exists, when in consequence of given facts the law declares that one person is entitled to enforce against another a claim, or to resist the enforcement of a claim urged by another.

* * *

When . . . such a state of facts exists as the law declares shall entitle a plaintiff to relief in a court of justice on a claim which he makes against another, or as it declares shall operate in favor of a defendant as a defense against a claim made against him, then it must be said that a right exists, has become fixed or vested, and is beyond the reach of retroactive legislation, if there be a constitutional prohibition of such laws. This, so far as we have been able to ascertain, has been the ruling in every State in this Union which has a constitutional provision in terms forbidding retroactive laws in which any ruling upon the question has been made.

3 S.W. at 253; *see also Likes*, 962 S.W.2d at 502; *Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916). Other Texas courts have embraced the definition of vested right as a well-founded claim as set forth in *Mellinger*. *See, e.g.*, *Texas Water Rights Comm'n*, 464 S.W.2d at 648; *Middleton*, 185 S.W. at 560. To be entitled to constitutional protection, however, the supreme court has emphasized that a cause of action must be both accrued *and pending*. *See, e.g.*, *Likes*, 962 S.W.2d at 502 (denying as applied challenge on retroactivity grounds to amended statute, which shortened limitations period, where suit was not filed until after the amended statute became effective). Thus, the Legislature may not retroactively extinguish or eliminate accrued and pending causes of action, either by procedural changes such as shortening statutes of limitation, or by substantive changes, such as creating new affirmative defenses. *See, e.g.*, *DeCordova v. City of Galveston*, 4 Tex. 470, 480 (Tex. 1849) ("[I]f a statute of limitations applied to existing causes barred all remedy or did not afford a reasonable period for their prosecution . . . such legislation

25

would be retrospective within the intent of the prohibition, and would therefore be wholly inoperative."); *Johns-Manville Sales Corp. v. R. J. Reagan Co.*, 577 S.W.2d 341, 345-46 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.) (holding that defendant could not assert statutory affirmative defense enacted three years after claim accrued because such would affect "vested rights and substantive law").

The dissent argues that the Statute does not impair vested rights because it merely changes the choice of law provision regarding successor liability and that Satterfield has no vested right in a remedy or a statutory choice of law provision. But the dissent's argument misses the point. In its motion for summary judgment, Crown Cork conceded that "the black letter rule in Texas" provided for successor liability. In its motion for summary judgment, Crown Cork stated that "the black letter rule in Texas has previously held a successor corporation liable for the torts of a predecessor corporation with which it merged" and "[u]ntil recently, it has been the black letter rule in Texas . . . and elsewhere . . . that when a predecessor corporation merges with a successor corporation, the successor can be held liable for the torts of the dissolved predecessor." Thus, Crown Cork did not raise the arguments that the Statute does not impair vested rights because it merely changes the choice of law provision or that Satterfield has no vested right in a remedy or statutory choice of law provision in its motion for summary judgment.[18] Accordingly, the trial court could not

---

[18] The dissent reasons that Crown Cork raised the issue in its reply. But Crown Cork may not use its reply to assert new grounds for summary judgment. *See* Tex. R. Civ. P. 166a(c); *see also Sanders v. Capitol Area Council*, 930 S.W.2d 905, 911 (Tex. App.—Austin 1996, no writ) (holding movant may not raise new grounds for summary judgment in reply to nonmovant's response); *Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486, 488 (Tex. App.—Houston [1st Dist.] 1987, no writ) (same).

have granted—and we cannot affirm—summary judgment on the ground now urged by the dissent. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *see also* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor.").

Moreover, the dissent is incorrect in its assertion that Satterfield has no vested right in a remedy. Texas courts have long recognized that laws affecting a remedy can be unconstitutionally retroactive when the entire remedy is taken away. *See Likes*, 962 S.W.2d at 502; *De Cordova*, 4 Tex. at 480. Like a statute of limitations, the Statute affects Satterfield's remedy because it removes entirely all remedy against Crown Cork. While the Legislature can affect a remedy by providing shorter limitations for an accrued cause of action without violating the constitutional prohibition against retroactivity if it affords plaintiffs a reasonable time in which to preserve their vested rights or if the amendment does not bar all remedy, *see Likes*, 962 S.W.2d at 502, it has not done so here.[19] Under the express terms of the Statute, Satterfield has no available remedy against

---

[19] Other states, including Florida, Georgia, Mississippi, Ohio, Pennsylvania and South Carolina have enacted similar legislation. But, in all of these states, courts have struck down the legislation to the extent it applies retroactively, or such legislation has expressly provided that it applies only prospectively to cases filed on or after the effective date of the legislation. Most recently, a Florida court of appeals held that the Florida legislation could not be retroactively applied to divest plaintiffs of their accrued causes of action, which were vested rights under Florida law. *See Williams v. American Optical Corp.*, 985 So.2d 23, 26-28, 33 (Fla. Dist. Ct. App. 2008). In 2006, the Ohio court of appeals determined that the Ohio legislation was unconstitutionally retroactive when applied to cases pending before the legislation's effective date. *See Ackison v. Anchor Packing Co.*, Lawrence No. 05CA46, 2006 Ohio App. LEXIS 7047, at *26-27 (Ohio Ct. App. 2006), *review granted*, 864 N.E.2d 652 (Ohio 2007); *Wagner v. Anchor Packing Co.*, Lawrence No. 05CA47, 2006 Ohio App. LEXIS 7050, at *11-12 (Ohio Ct. App. 2006) (same, but noting that legislation itself is not unconstitutionally retroactive because it gives courts discretion to decide on a case-by-case basis whether application to claims pending prior to the statute's effective date would be unconstitutionally retroactive); *cf. Wilson v. AC&S Corp.*, 864 N.E.2d 682, 695 (Ohio Ct. App. 2006) (holding, under facts presented, that new statute could be applied to plaintiff's case because she was still able to pursue cause of action for injury caused by husband's exposure to asbestos),

27

Crown Cork. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 149.001-.006.

Texas courts have recognized that a cure for retroactivity is to allow statutes to operate prospectively or for the Legislature to provide a grace period when enacting statutes affecting vested rights. *See, e.g.*, *Likes*, 962 S.W.2d at 502 (upholding retroactive application of new immunity defense when the Legislature afforded a reasonable time to file accrued causes of action); *Texas Water Rights Comm'n*, 464 S.W.2d at 649 (permittee afforded a reasonable time after enactment of statute to preserve their rights, thus providing a "reasonable remedy" after fair opportunity to protect rights); *Middleton*, 185 S.W. at 560 (recognizing that new law did not apply to claims that accrued prior to enactment).

In *Middleton*, the Texas Supreme Court upheld the constitutionality of the first worker's compensation law. 185 S.W. at 562. Acknowledging that the Legislature did not make the new law applicable to personal injury claims that had accrued before the act's passage, the supreme court explained, "A *vested* right of action given by the principles of the common law is a property right, and is protected by the Constitution as is other property. The Act, however, does

*appeal dism'd*, 864 N.E.2d 645 (Ohio 2007) (dismissed on appellant's application). And in 2004, the Pennsylvania Supreme Court invalidated the Pennsylvania statute on retroactivity grounds under the open courts provision of the Pennsylvania Constitution. *See Ieropoli*, 842 A.2d at 919. In addition, the legislation enacted in Georgia, Mississippi, and South Carolina expressly provides that such legislation applies only prospectively to cases filed after the statute's effective date. *See* Ga. S.B.182, § 4, 2007 Ga. ALS 9 ("[Chapter 15] shall become effective on May 1, 2007, and shall apply to asbestos claims that accrued or may accrue on or after that date"); S.C. S.B. 1163, § 4, 2006 S.C. Acts 280 ("This act takes effect upon approval by the Governor and applies to all civil actions asserting an asbestos claim filed on or after that date."); Miss. H.B. 1517, § 10, 2004 Miss. Laws 353 ("This Act shall take effect and be in force from and after its passage."). Thus, Texas is the only remaining state in which this type of legislation has been applied retroactively to bar accrued and pending causes of action and has not been struck down as unconstitutional.

not profess to deal with rights of actions accruing before its passage. . . . The laws may be changed by the Legislature so long as they do not destroy or prevent adequate enforcement of vested rights." *Id.* at 560.

Likewise, in rejecting an argument that an amendment providing additional bases for immunity under the Tort Claims Act unconstitutionally deprived a plaintiff of her vested rights, the supreme court emphasized that the amendment was constitutional because the Legislature afforded a grace period: "The Legislature can affect a remedy . . . for an accrued cause of action without violating the retroactivity provision of the Constitution if it affords a reasonable time or fair opportunity to preserve a claimant's rights under the former law, or if the amendment does not bar all remedy." *Likes*, 962 S.W.2d at 502. The *Mellinger* court also recognized that if a provision regulating a remedy should be "so unreasonable as to amount to a denial of right, as for instance, if a statute of limitations applied to existing causes barred all remedy, or did not afford a reasonable period for their prosecution . . . such legislation would be retrospective within the intent of the prohibition, and would therefore be wholly inoperative." 3 S.W. at 254-55.

Here, the Statute affords no grace period. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 149.001-.006. It was effective immediately, *see* Act of June 2, 2003, *supra*, § 23.02(b), 2003 Tex. Gen. Laws at 898, and it applied to all pending causes of action. *See id.* § 17.02(2), 2003 Tex. Gen. Laws at 895. In fact, the Statute was the only provision in House Bill 4, which completely re-wrote Texas law on class actions and medical malpractice claims, made applicable to pending causes of action. *See id.* The majority of House Bill 4 did not apply to *pending* cases, but

29

applied only to those cases filed after its general effective date—September 1, 2003.[20] *Id.* § 23.02(d), 2003 Tex. Gen. Laws at 899.

Even if one accepts the dissent's view that the Statute is remedial in the sense that it merely deprives Satterfield of a remedy for her accrued and pending claims against Crown Cork, the Statute would still be unconstitutional because it applies retroactively and fails to provide Satterfield, and other potential claimants, a reasonable time to bring suit after the enactment of the new law and preserve their vested rights. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999) (holding that procedural or remedial statutes may not be applied to pending suits at the time they become effective if doing so would destroy or impair rights that vested before the statute's effective date); *Mellinger*, 3 S.W. at 254-55 (same); *see also In re K.N.P.*, 179 S.W.3d 717, 720-21 (Tex. App.—Fort Worth 2005, pet. denied) (finding statute of limitations cannot be retroactively applied because "the statute did not provide a reasonable time for appellants to bring suit after enactment of the new law"); *Commercial Ins. Co. of Newark v. Lane*, 480 S.W.2d 781, 783 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.) (explaining that a procedural or remedial statute is unconstitutional if it "destroys or impairs vested rights, or takes away a litigant's remedy or right of action, or of defense, or so unreasonably encumbers or limits it as to render [it] useless or impracticable"). The Texas Supreme Court has consistently held that even procedural or remedial statutes cannot be applied retroactively where doing so would destroy or impair vested rights. *See Baker Hughes*, 12 S.W.3d at 4; *Owens Corning*, 997 S.W.2d at 572-73; *Likes*, 962 S.W.2d at 502.

---

[20] Articles 4, 5, and 8 of H.B. 4 were made applicable to an action filed on or after July 1, 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(c), 2003 Tex. Gen. Laws 847, 899.

The Legislature may regulate or even abolish common law claims like those asserted by Satterfield, but it cannot do so without granting some protection to vested rights and well-settled expectations by affording "a reasonable time or fair opportunity to preserve a claimant's rights under the former law." *See, e.g.*, *Owens Corning*, 997 S.W.2d at 572-73; *Likes*, 962 S.W.2d at 502; *see also Vaughn v. Fedders*, No. 05-11329, 2007 U.S. App. LEXIS 12915, at *8-11 (5th Cir. 2007) (applying Texas law and concluding that Texas Legislature cannot alter a remedy and "entirely deprive a party with an accrued cause of action of the right to sue, and must afford that party a reasonable time in which to bring suit" under former law); *Burlington N. & Sante Fe Ry. v. Skinner Tank Co.*, 419 F.3d 355, 359-60 (5th Cir. 2005) (same). The dissent's unsupported view that the Statute may be constitutionally applied retroactively in this case to bar Satterfield's accrued and pending claims against Crown Cork because the Statute is merely remedial is without merit.

Because Satterfield's common law claims of negligence and strict products liability accrued and were pending in the trial court when the Statute took effect, Satterfield held vested rights in those claims that could not be destroyed. *See Likes*, 962 S.W.2d at 502; *Mellinger*, 3 S.W. at 253; *Price Pfister, Inc.*, 48 S.W.3d at 354. By enacting this expressly retroactive Statute, the Legislature created a new substantive defense to successor liability and made it immediately effective in all pending cases, destroying Satterfield's vested rights in her accrued and pending common law claims against Crown Cork. Without affording a reasonable grace period in which Satterfield could have preserved her rights, we conclude that the Statute as applied in this case operates as an unconstitutional retroactive law and, therefore, violates article I, section 16 of the Texas Constitution.

31

### 3.   *Ieropoli v. AC&S Corp.*

In addressing the constitutionality of a similar Pennsylvania statute limiting the successor asbestos-related liabilities of certain companies, the Pennsylvania Supreme Court in *Ieropoli v. AC&S Corp.*, 842 A.2d 919 (Pa. 2004), held the statute unconstitutional as applied under the Pennsylvania Constitution. The *Ieropoli* court found that the statute eliminated any remedy for an accrued cause of action and that an accrued cause of action is a vested right. *Id.* at 930-32. The court cited longstanding precedent that an accrued cause of action is a vested right, which legislation may not extinguish:

> "There is a vested right in an accrued cause of action. . . . A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right."

*Id.* at 927 (quoting *Lewis v. Pennsylvania R. Co.*, 69 A. 821, 823 (Pa. 1908)). Finding the statute to be a violation of the state's constitution as applied, the *Ieropoli* court concluded that the plaintiff's vested rights could not be extinguished by subsequent legislation and that, by doing so, the statute offended the state constitution's open courts provision. *Id.* at 930-32.

Insisting that the police power overrides the Texas Constitution's prohibition of retroactive laws to distinguish this case from *Ieropoli*, Crown Cork urges that the Pennsylvania court's analysis is flawed because it "contained no analysis regarding whether a statute that may have impaired a vested right could nevertheless be constitutional because it was a legitimate exercise of the legislature's police power." Although *Ieropoli* involved the open courts provision of the

32

Pennsylvania Constitution[21] and a variation of the Texas asbestos statute, in holding the Pennsylvania statute to be unconstitutional as applied, the court's reasoning is instructive here.[22] Reversing the lower court, the Pennsylvania Supreme Court concluded that the statute violated the open courts provision of the Pennsylvania Constitution by destroying all remedy for an accrued action. *Id*. at 932. The court further held that an accrued claim is a vested right that cannot be eliminated by subsequent legislation. *Id*. at 927. In explaining why the statute violated the remedies clause of the Pennsylvania Constitution, the court stated:

---

[21] The Texas Constitution also has an open courts provision, providing that "[a]ll courts shall be open, and every person for any injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. It requires that state law "must afford meaningful legal remedies to our citizens, so the Legislature may not abrogate the right to assert a well-established common law cause of action." *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997) (citing *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993), and *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355-57 (Tex. 1990)).

[22] To the extent the dissent criticizes our discussion of the Pennsylvania Supreme Court's decision in *Ieropoli*, the dissent misses the mark. While we recognize that Satterfield does not raise an open courts challenge, the Pennsylvania Supreme Court's analysis of whether a similar statute passed by the Pennsylvania Legislature impaired vested rights and destroyed all remedy for an accrued cause of action applies with equal force in Texas given that Texas law has considered an accrued cause of action to be a vested right subject to constitutional protection for over one hundred years. *See City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997); *Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916); *Mellinger v. City of Houston*, 3 S.W. 249, 253 (Tex. 1887). Moreover, unlike the Texas Constitution, the Pennsylvania Constitution neither mandates nor prohibits the retroactive or prospective application of a new rule of law. *See Commonwealth v. Perez*, 845 A.2d 779, 790 (Pa. 2004); *Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1098 (Pa. 1991) (explaining that, under Pennsylvania common law, a decision announcing a new rule of law was normally considered to be retroactive). Although the Pennsylvania Constitution does prohibit the enactment of ex post facto laws, the Pennsylvania Supreme Court has held that the prohibition against ex post facto laws applies only to criminal or penal statutes, and not to retroactive laws affecting civil matters. *See, e.g.*, *Swartz v. Carlisle*, 85 A. 847, 849 (Pa. 1912); *Grim v. Weissenberg Sch. Dist.*, 57 Pa. 433, 435 (Pa. 1868).

Before the Statute's enactment, each cause of action that Appellants brought against Crown Cork was a remedy—it was the vehicle by which Appellants lawfully pursued redress, in the form of damages, from Crown Cork for an alleged legal injury. But under the Statute, Appellants cannot obligate Crown Cork to pay them damages on those causes of action. In this way, each cause of action has been stripped of its remedial significance, as it can no longer function as the means by which Appellants may secure redress from Crown Cork. As a remedy, each cause of action has been, in essence, extinguished. Under [the open courts provision of the Pennsylvania Constitution], however, a statute may not extinguish a cause of action that has accrued . . . . Therefore, as Appellants' causes of action accrued before the Statute was enacted, we hold that the Statute's application to Appellants' causes of action is unconstitutional . . . .

*Id*. at 930 (internal citation omitted). The court rejected the argument that because the plaintiffs could recover from other potential defendants, it still had a remedy and no cause of action had been extinguished. *Id.*

Crown Cork also asserts that the Statute passes constitutional muster because it does not deprive Satterfield of *all* remedy because she sued other defendants and can satisfy her claims by obtaining a judgment against those defendants. Crown Cork suggests that the Statute merely *varies* the remedy available to Satterfield. Because some of the other defendants who were sued jointly and severally are "some of this country's largest and most successful businesses," Crown Cork argues that Satterfield may obtain a settlement from another defendant that will satisfy her judgment and, therefore, the Statute does not entirely take away her remedy or even "diminish her remedy in any way."

In rejecting the notion that the Pennsylvania statute was purely remedial and did not bar *all* remedy, the *Ieropoli* court reasoned:

What this reasoning overlooks is the individual nature of a cause of action. A plaintiff does not assert one cause of action against multiple defendants. Rather, a

34

plaintiff asserts one cause of action (or two or several causes of action) against a single defendant. While a plaintiff may, under the appropriate circumstances, join the cause of action he has against one defendant with the cause of action he has against another defendant in one lawsuit, the cause of action he asserts against each defendant remains distinct. . . . Thus, the fact that the causes of action Appellant brought against Crown Cork's co-defendants are proceeding has no bearing on the Statute's unconstitutional effect on the accrued causes of action that Appellants brought against it.

*Id.* (internal citation omitted). Crown Cork cites no authority for the notion that the Texas Constitution allows a statute to retroactively destroy a vested right in an accrued claim if other parties may be liable on other claims seeking damages for the same injury.[23] The *Ieropoli* court observed that the Pennsylvania statute did more than simply alter the allocation of damages among multiple defendants: The Pennsylvania statute shielded Crown Cork from any obligation to pay damages on asbestos-related causes of action, and further removed it as a defendant. *See id.*

Although the Pennsylvania Constitution is different from the Texas Constitution, and the Pennsylvania court relied upon the open courts provision to uphold a challenge to the Pennsylvania statute,[24] both states use the vested-rights analysis and both constitutions—albeit under different provisions—prohibit statutes that retroactively eliminate accrued claims. While

---

[23] To the extent that the dissent relies on the Fifth Circuit's decision in *Jones v. Pullman Kellogg Corp.*, 785 F.2d 1270 (5th Cir. 1986), to support this proposition, the dissent's reliance is misplaced. Although the court in *Jones* found that a statute that eliminated Jones's medical malpractice claims against one defendant did not violate the open courts provision of the Texas Constitution because Jones's claims for damages against other defendants remained viable, the court in *Jones* did not consider whether such a law would violate the Texas Constitution's express prohibition against retroactive laws in article I, section 16. *See id.* at 1272-73.

[24] Although Crown Cork dismisses the relevance of the *Ieropoli* decision because it fails to address the state's police power, having found the Pennsylvania statute fatally flawed under the open-courts provision, the Pennsylvania court declined to address the remaining six theories of constitutional invalidity. *See Ieropoli*, 842 A.2d at 924 n.7.

35

the Pennsylvania Constitution does not contain a prohibition against retroactive laws, the Texas Constitution contains an open courts provision as well as an express bar against retroactive laws in article I, section 16, and an express prohibition on legislating away the rights contained in the bill of rights in article I, section 29. Accordingly, even though the Pennsylvania court relied on the open courts provision of the Pennsylvania Constitution, its reasoning and analysis regarding the prohibition against retroactive laws is persuasive in light of the Texas Constitution's explicit prohibition against retroactive laws.

***Does the Statute Fall Within the Scope of the State's Police Power and is it a Reasonable Exercise of the State's Police Power?***

Crown Cork argues that "even if the Statute impairs a vested right or deprives appellant of all remedy," the Legislature "possesses the power to regulate corporations and weigh the hardship of individuals against the hardship placed upon all of Texas' citizens, both individual and corporate." Crown Cork urges that Satterfield "ignores Texas law dictating that her individual rights must yield to the State's valid exercise of police power in enacting legislation designed to protect innocent successor corporations from a bankruptcy that could affect thousands of Texas residents." We disagree.

A statute enacted under the guise of police power that does not fall within the scope of that power and is not reasonably related to safeguarding the public's health, safety or welfare is an invalid exercise of that power. Because the people of Texas in plain language in the

Texas Constitution have not delegated to their government the power to enact a retroactive law, the Legislature has no police power to override Satterfield's vested rights.[25]

As we began our analysis with a presumption of constitutional validity, *see Enron Corp.*, 922 S.W.2d at 934, and *Vinson*, 773 S.W.2d at 266, there is also a strong presumption of reasonableness and recognition that a "Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968). As a practical matter, if this were not the rule, legislative bodies would be without power to legislate in all cases involving police power where there was room for a difference of opinion as to the wisdom and necessity therefor, except subject to the approval of a jury. But it is the duty of the courts to determine, as a matter of law, whether the Legislature's exercise of the police power is reasonable. *See Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Lawton v. Steele*, 152 U.S. 133, 137 (1894); *Missouri, Kan. & Tex. Ry. Co. v. Rockwall County Levee Improvement Dist. No. 3*, 297 S.W. 206, 212 (Tex. 1927); *Houston & Tex. Cent. R.R. Co. v. City of Dallas*, 84 S.W. 648, 653-54 (Tex. 1905); *City of Coleman v. Rhone*, 222 S.W.2d 646, 650 (Tex. Civ. App.—Eastland 1949, writ ref'd).

Facing claims that a statute unconstitutionally abrogated vested rights, some Texas courts have resolved the issue by addressing the Legislature's police power. *See, e.g, Texas State Bd. of Barber Exam'rs*, 454 S.W.2d 729, 731-32 (Tex. 1970); *Robinson*, 251 S.W.3d at 526; *Texas*

---

[25] We observe that any inquiry into whether the Legislature *reasonably* exercised its police power to enact a retroactive law is largely academic because the Texas Legislature has no power, police or otherwise, to enact such a law at all. *See* Tex. Const. art. I, §§ 16, 29.

*State Teachers Ass'n v. State*, 711 S.W.2d 421, 424 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Ismail v. Ismail*, 702 S.W.2d 216, 222 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *State Bd. of Registration for Prof'l Eng'rs v. Wichita Eng'g Co.*, 504 S.W.2d 606, 608 (Tex. Civ. App.—Fort Worth 1973, writ ref'd n.r.e.); *City of Breckenridge v. Cozart*, 478 S.W.2d 162, 164 (Tex. Civ. App.—Eastland 1972, writ ref'd n.r.e.); *City of Coleman*, 222 S.W.2d at 648-49. Likewise, the Texas Supreme Court relied on the police power to validate a statute addressing historic water use in *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618, 633-34 (Tex. 1996).

Even if we were to apply the overlay of a police power analysis in the context of limiting corporate liability, the police power remains subject to the limitations imposed by the Constitution upon every power of government. *Travelers Ins. Co.*, 76 S.W.2d at 1011 (recognizing that the police power is broad and comprehensive, but concluding that the Texas Constitution "forbids its exercise when the result would be the destruction of the rights, guarantees, privileges, and restraints excepted from the powers of government by the Bill of Right[s]"). For the police power to trump *any* constitutional provision is surely the most circular of arguments. "Emergency" does not *create* constitutional power; it may only furnish the occasion for the *exercise* of power. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 426 (1934).

Although the police power is broad, it is not without limits. *See Travelers Ins. Co.*, 76 S.W.2d at 1011. It remains subject to the rule that the Legislature cannot exercise *any* power that is expressly or impliedly forbidden by the state constitution, and the Legislature, through its exercise of police power, may not render the constitution meaningless. *See id.* at 1010-11. Reviewing courts

cannot sustain "[u]surpations of power, or the exercise of power in disregard of the express provision or plain intent of the constitution . . . in deference to the judgment of the Legislature, or some supposed necessity." 12A Tex. Jur. 3d, *Constitutional Law* § 57 (1993) (citing *Travelers Ins. Co.*, 76 S.W.2d at 1007). The mere assertion by the Legislature that a statute relates to the public health, safety, or welfare does not of itself bring such statute within the police power of a state. *Mugler v. Kansas*, 123 U.S. 623, 661 (1887) ("It does not at all follow that every statute enacted ostensibly for the promotion of these ends, is to be accepted as a legitimate exertion of the police powers of the State."); *see also* 16A Am. Jur. 2d, *Constitutional Law* § 335 (1998). The Legislature, in exercising its police power, "cannot, by its mere fiat," make reasonable that which is indisputably unreasonable, or unconstitutional. 16A Am. Jur. 2d, *Constitutional Law* § 335; *see also State v. Spartan's Indus. Inc.*, 447 S.W.2d 407, 417 (Tex. 1969). This accountability for the constitution may lie in the first instance with the Legislature, but it runs inexorably to the judiciary.

For a statute to be a proper exercise of police power, it must (i) be appropriate and reasonably necessary to accomplish a purpose within the scope of the police power and (ii) be reasonable and not arbitrary or unjust in the manner it seeks to accomplish the goal of the statute or so unduly harsh that it is out of proportion to the end sought to be accomplished. *See, e.g.*, *Mugler*, 123 U.S. at 661; *Martin v. Wholesome Dairy, Inc.*, 437 S.W.2d 586, 591 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.); *City of Coleman*, 222 S.W.2d at 648-49.

In support of its claim that the Statute falls within the scope of the police power, Crown Cork cites cases that involve exercises of police power for public health and safety, including *Barshop* (upholding laws related to environmental protection and water conservation); *Texas State Teachers Association*, *State Board of Registration for Professional Engineers*, and *Texas State*

*Board of Barber Examiners* (regulation of professions); and *Caruthers* (zoning). With a mere

nod to those cases analyzing the applicability of the police power, the supreme court in *Barshop*

concluded that "[a] valid exercise of the police power by the Legislature to safeguard the

public safety and welfare can prevail over a finding that a law is unconstitutionally retroactive."

925 S.W.2d at 633-34 (citing *Texas State Teacher's Ass'n*, 711 S.W.2d at 424; *State Bd. of*

*Registration for Prof'l Eng'rs*, 504 S.W.2d at 608; *Texas State Bd. of Barber Exam'rs*, 454 S.W.2d

at 732; and *Caruthers*, 290 S.W.2d at 345). *Barshop* is simply not relevant here. The supreme court

in *Barshop* considered whether the Edwards Aquifer Act was constitutional *on its face.* 925 S.W.2d

at 633 (plaintiffs argued that the Act was an unconstitutional retroactive law because "the amount

of water a landowner is allowed to withdraw is determined from action or inaction taken before the

passage, signing, or effective date of the Act"). *Barshop* did not involve accrued and pending causes

of action but addressed whether a landowner has vested property rights to water beneath his land.

*Id.* at 630. The supreme court did not have occasion to address article I, section 29, in part because

the court "assum[ed] without deciding that Plaintiffs possess[ed] a vested property right." *Id.* While

we agree with Crown Cork that these particular cases, including *Barshop*, may have involved a valid

exercise of police power, the question whether the Statute in this case is a valid exercise of police

power remains subject to review by this Court.[26] *See Lawton*, 152 U.S. at 137; *Missouri, Kan.*

---

[26] Citing *City of Coleman v. Rhone*, 222 S.W.2d 646, 649 (Tex. Civ. App.—Eastland 1949, writ ref'd), and *Neal v. Boog-Scott*, 247 S.W. 689, 691 (Tex. Civ. App.—Beaumont 1923, no writ), the dissent maintains that it is not the role of the courts to second guess the Legislature's determination that an act will serve a public use or purpose "except in instances where the legislative determination of the question is palpably and manifestly arbitrary and incorrect." According to the dissent, then, the Legislature's enactment of a statute under the guise of exercising its police power would be virtually without limits. But this is not the recognized standard of review under Texas law. *See Travelers Ins. Co. v. Marshall*, 76 S.W.2d 1007, 1011-12 (Tex. 1934) (courts may not sustain the Legislature's exercise of police power where forbidden by Texas Constitution); *Missouri, Kan.*

40

*& Tex. Ry. Co.*, 292 S.W. at 212.

In determining whether an exercise of police power is proper, we ask if the statute in question bears a real and substantial relation to the public health, safety, morals, or general welfare *of the public*. *See Barbier v. Connolly*, 113 U.S. 27, 31 (1885) (legislation must carry out a "public purpose" and promote "the general good"); *see also Lombardo v. City of Dallas*, 73 S.W.2d 475, 478 (Tex. 1934) (only *public* necessity can justify exercise of police power); *Jefco, Inc. v. Lewis*, 520 S.W.2d 915, 922 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) ("The police power is grounded upon public necessity[,] which alone can justify its exercise."). Courts have performed this inquiry in a number of ways.

For example, in *Martin v. Wholesome Dairy, Inc.*, this Court considered whether there was a reasonable basis for the Legislature to enact a statute regulating the sale of "filled milk," an imitation milk product known as "Farmer's Daughter High Protein Drink," based on its police power. 437 S.W.2d at 591. Wholesome Dairy sought a declaratory judgment that the statute was unconstitutional and witnesses testified in the non-jury trial. *Id.* at 587. Various doctors testified to the nutritional content of the product and whether its packaging and labeling was intended to mislead the general public into believing that the product contained natural whole cow's milk. *Id.*

---

*& Tex. Ry. Co. v. Rockwall County Levee Improvement Dist. No. 3*, 297 S.W. 206, 212 (Tex. 1927) (legislative exercise of police power is subject to judicial review); *Houston & Tex. Cent. R.R. Co. v. City of Dallas*, 84 S.W. 648, 653-54 (Tex. 1905) (legislative enactments "'are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power'") (quoting *Dobbins v. Los Angeles*, 195 U.S. 223, 236 (1904)); *see also Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Lawton v. Steele*, 152 U.S. 133, 137 (1894). Even the court of appeals in *City of Coleman* recognized that the police power, although broad and comprehensive, remains subject to constitutional limits. 222 S.W.2d at 649 ("This [police] power and the right to exercise it is limited by the Constitution.").

at 592-600. The trial court made findings of fact and conclusions of law. *Id.* at 587-88. In declaring the statute to be constitutional and within the State's police power to regulate matters relating to the health and safety of its citizens, the Court relied upon the qualifications and expertise of the doctors "together with their experience and studies in their respective fields, reflected by the record, mak[ing] admissible their opinions on the matters about which they testified." *Id*. at 602; *see also Jefco, Inc.*, 520 S.W.2d at 922 (concluding regulation fell within police power after considering evidence at trial and administrative hearing).

In *City of Houston v. Johnny Frank's Auto Parts Co.*, the court of appeals addressed whether an ordinance regulating the operation of automotive wrecking and salvage yards within the City was within the scope of the City of Houston's police power. 480 S.W.2d 774, 775 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). After a non-jury trial in which the trial court filed findings of fact and conclusions of law, the court found that the evidence was legally sufficient that the ordinance was a proper exercise of police power because the proof showed that such wrecking and salvage yards were a "hazard to the safety of children who are naturally attracted by such conditions." *Id*. at 780.

Courts have also relied upon precedent and upon matters that traditionally hinge "upon the public need for safety, health, security, and protection of the general welfare." *City of Coleman*, 222 S.W.2d at 648. Thus, the Legislature, in the exercise of the police power, may regulate occupations and professions. *See, e.g.*, *Texas State Bd. of Barber Exam'rs*, 454 S.W.2d at 731 (barbers); *Daniel v. Tyrrell & Garth Inv. Co.*, 93 S.W.2d 372 (Tex. 1936) (insurance companies); *Texas State Teachers Ass'n*, 711 S.W.2d at 421 (regulation of teaching profession and

public education system was valid exercise of state's police power); *Texas State Bd. of Pub. Accountancy v. Fulcher*, 515 S.W.2d 950 (Tex. Civ. App.— Corpus Christi 1974, writ ref'd n.r.e.) (accountants); *Bryant v. State*, 457 S.W.2d 72 (Tex. Civ. App.— Eastland 1970, writ ref'd n.r.e.) (attorneys); *Dovalina v. Albert*, 409 S.W.2d 616 (Tex. Civ. App.— Amarillo 1966, writ ref'd n.r.e.) (polygraph operators); *Francisco v. Board of Dental Exam'rs*, 149 S.W.2d 619 (Tex. Civ. App.—Austin 1941, writ ref'd) (dentists). In declaring teaching to be a profession, courts have also recognized that the Legislature's duty to establish and maintain a public school system in Texas involves the exercise of the state's police power. *See, e.g.*, *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556 (Tex. 1985); *Mumme v. Marrs*, 40 S.W.2d 31 (Tex. 1931); *Passel v. Fort Worth Indep. Sch. Dist.*, 429 S.W.2d 917, 925 (Tex. Civ. App.— Fort Worth 1968) ("We think it well within the police power of the State to adopt standards to guide the administration of our public school system. . . ."), *rev'd on other grounds*, 440 S.W.2d 61 (Tex. 1969). "The power of the State to compel attendance at some school and to make reasonable regulations for all schools . . . is not questioned." *Meyer v. State of Nebraska*, 262 U.S. 390, 402 (1923). And the Legislature's duty to maintain the public school system is of constitutional magnitude. *See* Tex. Const. art. VII, § 1.

In *Meyer v. Nebraska*, the Supreme Court addressed the extent of the valid exercise of the police power. 262 U.S. at 397. In that case, the Supreme Court struck down a state law forbidding instruction in certain foreign languages. *Id.* at 403. The State of Nebraska argued that, as an attribute of sovereignty, the police power exists without any reservation in the Constitution, and that it is founded on the right of the State to protect its citizens, to provide for their welfare and progress, and to insure the good of society. *Id.* at 397-98. Facing an argument by the State that the

enactment of a statute barring the teaching of the German language to a child who had not passed the eighth grade comes "reasonably within the police power of the state," the Court concluded that the statute, even though under the guise of protecting the public interest, was arbitrary and "without reasonable relation to some purpose within the competency of the State to effect." *Id.* at 400. Holding that "[d]etermination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts," the Court reasoned that even a desirable end "cannot be promoted by prohibited means." *Id*. at 400-01.

Likewise, in the 1880's, the State of Kansas, in its desire to eradicate "misery, pauperism, and crime," passed a law prohibiting the manufacture of intoxicating liquors. *Mugler*, 123 U.S. at 653. The State argued that the police power was alone competent "to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority." *Id.* at 658-59. In recognizing that the power to determine the extent of the police power, i.e., the extent to which "the peace and peril" of the many is endangered by the few, is lodged in the legislative branch of the government, the Court stated, "It belongs to that [legislative] department to exert what are known as the police power of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety." *Id.* at 661. The Court explained, however, that the police power is limited:

> It does not at all follow that every statute enacted ostensibly for the promotion of these ends, is to be accepted as a legitimate exertion of the police power of the State. There are, of necessity, limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, the courts must obey the Constitution rather than the law-making department of

government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed.

*Id.* Citing *Marbury v. Madison*, 5 U.S. 137, 176 (1803), the Court queried, "To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?" Recognizing the singular role of the courts in determining if the enactment came within the reasonable police powers of the state, the Court reasoned:

> The courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

*Id.* Under these principles, the Supreme Court concluded that the manufacture and sale of intoxicating liquors fell within the police powers of the State as "protecting the community against the evils which confessedly result from the excessive use of ardent spirits," and that the regulations were not under the mere guise of police power aiming to deprive the citizen of his constitutional rights. *Id.* at 662. The dissenting justice cited to the Supreme Court of Kansas, which urged that the Legislature of the State "may have gone to the utmost verge of constitutional authority." *Id.* at 678.

We may fairly say, then, that by stripping a litigant of his rights in his pending and vested common law claim, for the purported benefit of one or more corporations succeeding to liability it seeks to shed, and without a true articulation of any "real or substantial" relation to the

45

objects of public health, public morals, or the public safety, we must exercise our duty to adjudge that the limitations of the police power have been far exceeded, so as to no longer be in sight of those who claim to rely on it. Safety, health, morals. It cannot be supposed that these objects are addressed in any real manner by this legislation. If this be an appropriate exercise of police power, what is not?

If the police power is to have any meaningful limitations, public needs must be distinguished from the financial protection of a particular private business or business segment. At the heart of the police power is its grounding in the public interest. *See Jefco, Inc.*, 520 S.W.2d at 922. Crown Cork has made no showing and there is nothing in the record to demonstrate that the Legislature's enactment of the Statute falls within the scope of the police power. Although Crown Cork protests that the Legislature reasonably exercised its police power "in favor of securing jobs and wages for thousands of Texas citizens who may benefit from the continued viability of the successor corporations for whom they work that are able to take the benefit of the limitation of liability in the Statute," this utterance alone does not bring the Statute within the police power of the State. *See Lawton*, 152 U.S. at 137; *Travelers Ins. Co.*, 76 S.W.2d at 1011; *Missouri, Kan. & Tex. Ry. Co.*, 297 S.W. at 212. For the Statute to be a reasonable exercise of the State's police power, there must be a connection or relationship between the provisions of the Statute and its avowed purpose, and the Statute must be designed to accomplish the public goal.

Here, Crown Cork acknowledges—and even urges—that the professed purpose of the statute is "to rescue corporations like Crown Cork & Seal from the serious problems created by asbestos litigation": "The Legislature therefore enacted legislation limiting the liability of

corporations sued in asbestos litigation that acquired their liability solely through a merger." But there is no showing that the purpose of the Crown Cork statute—to save companies on the verge of bankruptcy—is served by including Crown Cork, or any other company within its scope. For us to assess the reasonableness of the statute, the Legislature's intent through findings or the plain language of the statute must be clear. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 562-63 (1995) (invalidating law and explaining that lack of congressional findings hinders a court's review of legislative intent). Because the Legislature made no findings, like the Supreme Court in *Lopez*, we have no expression of legislative intent beyond the words of the statute to help us determine whether the enactment of the statute was a reasonable exercise of the Legislature's police power.

We find it significant that the Legislature declined to include any legislative findings in the Statute. *See id.* Although House Bill 4 includes legislative findings that address health care liability claims, *see* Act of June 11, 2003, *supra*, § 10.11, 2003 Tex. Gen. Laws at 884, there are no similar legislative findings regarding the Statute. Thus, to the extent Crown Cork relies on "the asbestos litigation crisis" and its own fragile financial condition, there are no legislative findings on these issues. Nor does the text of the Statute itself convey an emergency or crisis regarding asbestos litigation or the fragile financial condition of any corporation, foreign or domestic. Even so, the Texas Supreme Court has held that emergency conditions do not allow the Texas Legislature to enact a statute that destroys vested rights in violation of the Texas Constitution. *See Travelers Ins. Co.*, 76 S.W.2d at 1011.

We conclude the activity sought to be addressed in the Statute does not fall within the scope of the police power, it is not reasonable in its exercise of that power, and it does not, in any

47

event, override the constitutional interest in preserving the common law claim. The Statute, as applied to Satterfield, is unconstitutional because it violates the prohibition against retroactive laws embraced by the people of Texas in their Bill of Rights.

## CONCLUSION

It is a matter of fundamental fairness and the lynchpin of our justice system that the settled expectations of litigants and in particular any validly vested rights not be defeated by subsequently enacted legislation. That the people of Texas recognized the importance of predictability and stability in their justice system and the potential for the powerful to obtain special and improper benefits[27] is fully reflected in the plain language of the Texas Constitution. The Texas Constitution continues to speak plainly and eloquently to prohibit legislation that undermines its sound notions of fundamental fairness as understood by the people when they voted on its adoption.

Based on the structure and plain language of the Texas Constitution, as well as the weight of binding precedent, we conclude the Statute is an unconstitutional retroactive law as applied to Satterfield's claims against Crown Cork. As applied to Satterfield, we conclude that the Statute retroactively destroys her vested rights in accrued common law tort claims against Crown Cork and that the Statute violates article I, section 16 of the Texas Constitution.

For these reasons, we reverse the trial court's summary judgment and remand this case to the trial court for further proceedings.

---

[27] *See Landgraf*, 511 U.S. at 267 n.20.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Henson;
    Dissenting opinion by Chief Justice Law

Reversed and Remanded

Filed:   August 29, 2008