## THOMPSON v. CITY OF CARROLLTON.

### No. 6352.

Court of Civil Appeals of Texas. Texarkana.

April 15, 1948.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

R. L. Dillard, Jr., of Dallas, for appellee.

HALL, Chief Justice.

Appellant brought this suit against appellee, the City of Carrollton, Texas, to enjoin the enforcement of Section 6.05c of the Zoning Ordinance of the City of Carrollton, which provides for a minimum floor area of 900 square feet in "B" residence district, claiming that such section of said ordinance was unconstitutional and void. The trial before the court without a jury resulted in a judgment for defendant, and plaintiff appeals.

The particular portion of the ordinance attacked is Section 6.05c, which restricts the size of dwelling houses in district "B" of said city to be not less than 900 square feet of floor area. Appellant averred in his pleading that said section of the ordinance is unconstitutional and void for the reason that it "in no way promotes or protects public health, safety, morals or welfare and constitutes an unreasonable and unjust limitation to the reasonable and lawful use of plaintiff's property"; and that the said restriction bears no relation to the public health, safety or general welfare of the people in said city. Appellant's contention on this appeal corresponds to his pleading.

In 1946, the City of Carrollton, under authority granted by the Legislature in Vernon's Ann.Civ.St., Articles 1011a, 1011b, and 1011c, passed a Comprehensive Zoning Ordinance dividing the city into three divisions, A, B, and C. The appellant owns a lot in division "B" of said city. He made application to the city for permission to build a house thereon with a floor space of 752 square feet. His permit was denied and this suit for injunction resulted.

Section 1 of said ordinance is as follows: "The zoning regulations and districts, as herein established, have been made in accordance with a comprehensive plan for the purpose of promoting health, safety, morals and the general welfare of the community. They have been designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, parks and other public requirements. *They have been made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for the particular uses and with a view of conserving the value of building and encouraging the most appropriate use of land throughout the community." (Italics ours.)*

The concluding words of this section make it very clear that in addition to maintaining the public health and safety it was designed to conserve the value of building and encourage the most appropriate use of land throughout the community. We think the section of the ordinance attacked must be held constitutional and valid under the authority of Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, 712, (w/r). In that case Judge Looney has this to say: "The general welfare is served by the promotion of prosperity and the conservation of values. As before shown, the statute (Art. 1011c), authorizing cities and towns to enact zoning regulations, makes it the duty of such bodies to so regulate as to conserve property values, encourage the most appropriate use of property throughout the municipality; necessarily forbidding any regulation that would affect adversely the value of property, or encourage an inharmonious or inappropriate use thereof. * * * Furthermore, in zoning, the aesthetic consideration is not to be ignored. Harmonious appearance, appropriateness, good taste and beauty displayed in a neighborhood not only tend to conserve the value of the property, but foster contentment and happiness among homeowners. * * * 'If by the term "aesthetic considerations" is meant a regard merely for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reason for saying that such a consideration is not a matter of general welfare. The beauty of a fashionable residence neighborhood in a city is for the comfort and happiness of the residents, and it sustains in a general way the value of the property in the neighborhood.' "

The presumption obtains in matters of this nature, that the governing body of the city has acted wisely and that it has exercised its judgment and discretion wisely until such presumption is rebutted. In the case of the City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, 898, (w/r), it is said: "An attack upon any regulatory measure of a municipality is usually subject to the following well-settled rules: 'The legislative body may determine in the first instance whether or not facts or conditions exist warranting a classification; and its determination of that issue cannot be disturbed in the absence of a clear showing that there is no reasonable basis therefor. The presumption is in favor of the validity of the ordinance. It will be presumed, in the absence of a clear showing to the contrary, that the governing body had sufficient reason, in view of local conditions, to make the classification which they have made; and if there could have existed a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. The burden of establishing its discriminatory character is upon a person attacking it on that ground; and any reasonable doubts as to the validity of the classification will be resolved in favor of its validity.' * * * Without exception, these familiar principles have been applied to zoning ordinances emanating from an authorized police power. Otherwise expressed, a clear abuse of municipal discretion must appear as a predicate for judicial interference. * * * 'The extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a

972

valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused a permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury.' " (Citing authorities).

It was said in the City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S. W.2d 169, 171, (error dismissed, correct judgment): "Much must be left to the judgment and discretion of the city council, and when they have exercised their judgment and discretion in passing an ordinance it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness * * * must be clear, manifest, and undoubted, so as to amount, not to a fair exercise, but to an abuse of discretion * * *."

■ Appellant relies upon the case of Senefsky v. City of Huntington Woods, 307 Mich. 728, 12 N.W.2d 387, 390, 149 A.L.R. 1433, by the Supreme Court of Michigan, which held a minimum floor space ordinance unreasonable. We would not be justified in following the holding in that case in view of a contrary holding by the courts of this state. Even in that case it is said: "It is not necessary for decision herein and we do not hold that under proper circumstances a municipality may not exercise its delegated police power in the manner herein attempted by defendants. Instead the extent of our holding herein is that under the circumstances of the instant case the enforcement against the plaintiff of the provision in the amended ordinance fixing the minimum amount of floor area is unreasonable."

Furthermore, the dissenting opinion in the above case makes this significant statement: "It is the purpose of the ordinance to stabilize and conserve property values, and this purpose is within the ambit of the police power. Cady v. City of Detroit, 289 Mich. 499, 286 N.W. 805. The sizes of the houses already erected in the subdivision in question are part of the circumstances of the case and furnish some basis for the test of reasonableness. See Pere Marquette Railway Co. v. Muskegon Township Board, 298 Mich. 31, 298 N.W. 393."

■ After a careful study of the record we have concluded that the appellant has failed to discharge the burden resting upon him of showing the unreasonableness of the section of the ordinance attacked. This court cannot substitute its judgment for that of the governing body of the City of Carrollton. We think the ordinance is fully authorized by Vernon's Ann.Civ.St. Articles 1011a, 1011b, and 1011c, and bears a reasonable relation to the power delegated by said articles.

The judgment of the trial court is in all things affirmed.