**CITY OF HOUSTON et al., Appellants,**

v.

**JOHNNY FRANK'S AUTO PARTS COMPANY et al., Appellees.**

**No. 601.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 10, 1972.

Rehearing Denied May 31, 1972.

William A. Olson, City Atty., F. William Colburn, Sr., Brian L. Reade, Asst. City Attys., Houston, for appellants.

Seymour Lieberman, Lieberman & Komiss, Houston, for appellees.

TUNKS, Chief Justice.

On May 4, 1971, the City Council of the City of Houston passed an ordinance, designated as number 71–825, regulating the operation of automotive wrecking and salvage yards within the City. Johnny Frank's Auto Parts Company and several other owners of such automotive wrecking yards filed suit against the City of Houston for declaratory judgment that such ordinance was void and for injunction against its enforcement. After a non-jury trial the trial court rendered judgment adjudicating the ordinance void and permanently enjoining the City from enforcing it. The City appealed.

Ordinance number 71–825 provides that all oil, gasoline, and other flammable liquids shall be drained from wrecked automobiles placed on wrecking yards within the city limits. It provides that wrecking yards must be surrounded by a solid fence or wall. The fence on any side of the yard running generally parallel to and within 100 feet of a street right-of-way shall be at least eight feet high, and on other sides at least six feet high. It prohibits the display of or working on wrecked vehicles or parts outside the required walls.

The trial court filed findings of fact and conclusions of law. As findings of fact it was recited that the plaintiffs' businesses do not adversely affect the value of surrounding property, the health of the people of the City, the safety of such people, the comfort of the people or the welfare of the people. The conclusions of law were:

"1. The Court concludes that the enforcement of City of Houston Ordinance 71–815 will deprive these Plaintiffs of property rights without due process of law and will result in an irreparable injury thereto with no adequate remedy at law.

2. As to these Plaintiffs, the Court concludes that the enactment of Section 2 of Ordinance 71–815 dealing with flammable liquids has no substantial relationship to the public health, safety, morals or welfare of the people of the City of Houston, and, therefore, does not come within the police power vested in the City of Houston.

3. As to these Plaintiffs, the Court concludes that the enactment of Section 3 of Ordinance 71–815 dealing with fencing has no substantial relationship to the public health, safety, morals or welfare of the people of the City of Houston, and, therefore, does not come within the police power vested in the City of Houston.

4. The Court concludes that to compel these Plaintiffs to comply with City of Houston Ordinance 71–815 would be an unreasonable exercise of Defendants' police power and would constitute a taking of property in violation of the Texas Constitution. V.A.C.S., Article 1, Sections 3, 19."

(The reference to the ordinance in question as 71–815, instead of 71–825, is admittedly a typographical error.)

The principal authority upon which the appellees rely as support for their contention that the ordinance is unconstitutional is Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513 (1921). In that case a zoning ordinance enacted by the City of Dallas was held unconstitutional. The ordinance was held not to be a constitutional exercise of the city's police power. It prohibited the construction of any business house within what it defined as a residential district except with consent of three-fourths of the owners of property within the district. Even with the required consent of property owners the ordinance required that the design of the proposed building be approved by the building inspector. It did not prescribe standards to control the inspector's approval or disapproval of such design.

In the Spann case the land owner who challenged the constitutionality of the ordinance had been denied a permit to build, within a residential district, store houses of brick, one-story in height, of artistic design, set back at least ten feet from the property line and at a cost of $6500.00. The Supreme Court, in holding the ordinance unconstitutional, said:

"Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages. Cooley, Const.Lim. 248.

\* \* \* \* \* \*

The ordinance is clearly not a regulation for the protection of the public health or the public safety. It is idle to talk about the lawful business of an ordinary retail store threatening the public health or endangering the public safety. It is equally idle in our opinion to speak of its impairing the public comfort or as being injurious to the public welfare of a community. Retail stores are places of trade, it is true, but as ordinarily conducted they are not places of noise or confusion. This is particularly true of small stores, such as it appears the plaintiff contemplated erecting. The ordinary trading that goes on within them is reputable and honorable, and can hurt nobody. According to common experience it is done in an orderly manner. It could disturb or impair the comfort of only highly sensitive persons. But laws are not made to suit the acute sensibilities of such persons. It is with common humanity—the average of the people, that police laws must deal. A lawful and ordinary use of property is not to be prohibited because repugnant to the sentiments of a particular class. The ordinance visits upon ordinary retail stores, engaged in a useful business, conducted in an orderly

manner, frequented and availed of by respectable people, and doubtless serving as a convenience to many, all the prescription visited upon common nuisances.

\* \* \* \* \* \*

Like municipal regulations interfering with private property rights and founded upon purely aesthetic considerations, are universally held invalid."

The Court also noted that the ordinance, in giving the building inspector discretion to deny a permit without providing any rule or standard to guide the exercise of that discretion, was invalid.

The history, since the date of the Spann case, of cities' exercise of their police powers in the enactment of zoning ordinances is significant. An opinion which gave impetus to the increase in the enactment of zoning ordinances by cities was Village of Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). There the Court said, at pages 386–388, 47 S.Ct. at page 118:

"Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which before advent of automobiles and rapid transit street railways would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the meaning, but to the application of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall.

The ordinance now under review, and all similar laws and regulations, must find their justification in some aspects of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. In solving doubts, the maxim 'sic utere tuo ut alienum non laedas,' which lies at the foundation of so much of the common low of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power. Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. Sturgis v. Bridgeman, L.R. 11 Ch. 852, 865. A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legis-

lative judgment must be allowed to control.

In 1927 the Texas Legislature enacted statutes, Tex.Rev.Civ.Stat.Ann. arts. 1011a et seq., giving cities the power to pass zoning ordinances. In City of Dallas v. Meserole, 155 S.W.2d 1019 (Tex.Civ.App.-Dallas 1941, writ ref'd w. o. m.) it was held that these statutes gave cities the power to pass zoning ordinances as a valid exercise of their police power.

The ordinance with which this case is concerned is not a zoning ordinance. It does not establish a comprehensive plan by which the city is divided into districts wherein property is limited to specified uses and it was not passed in accordance with the procedures specified for the passage of zoning ordinances. This ordinance does not prohibit any particular use of any property, but merely regulates the use of property in the operation of an automobile wrecking or salvage yard. It is, however, somewhat akin to a zoning ordinance in that it is an exercise of the city's police power. The zoning ordinance cases, such as those cited above, furnish a guide for testing the validity of this exercise of the City's police power.

The preamble to this ordinance recites conclusions by the City Council of the City of Houston to the effect that the existing practices in the operation of wrecking yards are a detriment to health, safety and welfare. It was recited that they constitute fire hazards, traffic hazards, invitations to theft and burglary, and dangerous attractions to children, and that they depreciate the value of other property. The trial court made findings of fact contrary to those made by the City Council.

■ It is the legislative body of the City of Houston, its City Council, that has the authority and responsibility to determine factually whether the practices followed in the operation of automotive wrecking and salvage yards so adversely affect the health, safety and welfare of the inhabitants of the city as to call for the exercise of the police

power in regulating them. Neither the trial court nor this Court may substitute its factual finding in that respect, for that of the City Council. The Council's finding that a condition exists, the control of which is a proper exercise of the police power, must be accepted by the courts as a basis for accepting the validity of the objective of an ordinance if there is any legally sufficient evidence to support such finding. Smith v. Davis, 426 S.W.2d 827 (Tex.Sup. 1968); City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955).

■ There was testimony in the trial court as to facts which sustained the City Council's conclusions which are listed above. There was also testimony that would have, standing alone, sustained a factual conclusion on the part of the City Council that no such conditions exist. We must presume also that the City Council considered matters of common knowledge whether they were the subjects of testimony in the trial court or not. It doesn't require testimony to know that leaving flammable materials in a collection of junked cars increases the possibility of fire. Wrecked cars have jagged edges of metal that are dangerous to playing children who have access to them. Leaving vehicles in a large unenclosed area facilitates theft. Because of these facts and because of the unsightliness of such operations wrecking yards must inevitably have a depreciating effect on the value of other property in their vicinities. Tex.Penal Code Ann. art. 1436-3, sec. 9 (1971) recites:

"Junked vehicles which are located in any place where they are visible from a public place or public right-of-way are detrimental to the safety and welfare of the general public, tending to reduce the value of private property, to invite vandalism, to create fire hazards, to constitute an attractive nuisance creating a hazard to the health and safety of minors, and are detrimental to the economic welfare of the State, by producing urban blight which is adverse to the mainte-

nance and continuing development of the municipalities in the State of Texas, and such vehicles are therefore, declared to be a public nuisance."

We hold that the enactment of an ordinance to regulate the operation of automotive wrecking and salvage yards is a constitutional exercise by a city of its police powers.

 The question remains whether the ordinance here involved was such an unreasonable exercise of police power as to be invalid. Even though an ordinance is passed to accomplish a purpose properly within the scope of a city's police power, it must not be wholly unreasonable nor unduly oppressive in its operation upon those affected by it. It must be reasonably necessary for the preservation of health, safety and welfare. 40 Tex.Jur.2d Municipal Corporations, sec. 327 (1962). However, when the validity of an ordinance is attacked on this basis there is a presumption of validity and the attacker, to prevail, must clearly show that it is arbitrary, unreasonable and an abuse of the police power. City of Weslaco v. Melton, 158 Tex. 61, 308 S.W.2d 18 (1957). The question of its reasonableness is a question of law, not of fact. City of Coleman v. Rhone, 222 S.W.2d 646 (Tex. Civ.App.-Eastland 1949, writ ref'd). In City of Waxahachie v. Watkins, supra, 275 S.W.2d at page 480, the Court said:

"The courts cannot interfere unless it appears that the ordinance represents a clear abuse of municipal discretion. And the 'extraordinary burden' rests on one attacking the ordinance 'to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it.'"

One basis upon which the plaintiffs contended that the ordinance was unreasonable and unduly burdensome on them was in the expense to which they would be put in complying with it. There was testimony to the effect that it would cost as much as $12,500.00 to fence one of the yards with a wood fence and $18,500.00 with a chain link fence with slats. One of the plaintiffs testified that his yard was on leased property and that the cost of complying with the ordinance would force him out of business. There was also testimony that their business would suffer if they could not leave their wares visible to the passing public.

The fact that the enforcement of this ordinance will cause pecuniary loss to those affected by it does not require that it be held invalid. See State v. Spartan's Industries, Inc., 447 S.W.2d 407 (Tex.Sup. 1969) and State v. Richards, 157 Tex. 166, 301 S.W.2d 597 (Tex.Sup. 1957).

The ordinance does not result in a taking of property nor even a prohibition of a use of the property. It only regulates the operation of a particular type of business. In Caruthers v. Board of Adjustment, 290 S.W.2d 340, 346 (Tex.Civ.App.-Galveston 1956, no writ) the Court said:

"It is also our belief that, under the authorities, short of actual taking for public use, legislation regulatory of the use of property pursuant to the police power is to be sustained regardless of even severe hardship in particular cases whenever the public health, safety, morals or general welfare outweigh the equities of the individual property owner."

In Auto Transit Co. v. City of Ft. Worth, 182 S.W. 685, 692 (Tex.Civ.App.-Fort Worth 1916, writ ref'd) the Court said, "Nor does the fact that plaintiffs will suffer a pecuniary injury by reason of the enforcement of said ordinance even tend to establish the truth of the contention that the ordinance is invalid."

The pecuniary loss that these plaintiffs will suffer from the enforcement of the ordinance is not so out of proportion to the benefit that the public will receive as to render it invalid.

The plaintiffs also argue that the ordinance is invalid for the reason that it requires fences made of wood, masonry, corrugated sheet metal or chain link fences with strips of wood or metal run through all links. They contend that the only purpose for this requirement is to achieve an aesthetic result and that such purpose is not within the scope of the city's police power. Their principal authority for such contention is Spann v. City of Dallas, cited and quoted above. In that case the Court held that "purely" aesthetic considerations were not a proper basis for the exercise of the police power. In this case the City Council recited, as one basis for the enactment of this ordinance:

"The present visibility and accessibility of wrecked automotive vehicles and the parts therefrom upon and about the premises of many automotive wrecking and salvage yards in the City of Houston is a hazard to the safety of children who are naturally attracted by such conditions; . . . .".

Such recitation demonstrates that this ordinance is not based upon "purely" aesthetic considerations.

Another recitation in the preamble to the ordinance is:

"The open and obvious use of land in the City of Houston for the wrecking, storage or display of wrecked or junked automotive vehicles or the parts therefrom has caused a relative decline in the market value of property, the use and enjoyment of property, the enjoyment of life, and the general welfare of those inhabitants of the City of Houston who live near such business locations. The present visibility and accessibility of wrecked automotive vehicles and the parts therefrom upon and about the premises of many automotive wrecking and salvage yards in the City of Houston is a hazard to the safety of children who

are naturally attracted by such conditions; . . . .".

If the removal of an eyesore be considered an aesthetic achievement, it is apparent from this recitation that it was not the sole purpose of the City to please the senses, or, more accurately, to remove an offense to them, in requiring that the fences be solid. It was the expressed purpose to remove a condition that, because of its unsightliness, impaired the value of surrounding property. The propriety of such purpose as a basis for the exercise of police power is suggested by the language in Connor v. City of University Park, 142 S.W.2d 706, 712 (Tex.Civ.App.-Dallas 1940, writ ref'd) wherein the Court said:

"Furthermore, in zoning, the aesthetic consideration is not to be ignored. Harmonious appearance, appropriateness, good taste and beauty displayed in a neighborhood not only tend to conserve the value of property, but foster contentment and happiness among homeowners."

See also Thompson v. City of Carrollton, 211 S.W.2d 970 (Tex.Civ.App.-Texarkana 1948, no writ).

The appellees also cite the case of City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953) as support for their contention that their operations are not nuisances. The case is not in point here. In the first place, it is not necessary that a business constitute a nuisance to be subject to regulation under the police power. The case cited so indicates. That case held that giving retroactive effect to a zoning ordinance to prohibit the operation of a wrecking yard was unreasonable and invalid. This ordinance doesn't prohibit the operation of wrecking yards—it regulates their operation. Of further significance is the fact that since the date of that case the Legislature has enacted Tex.Penal Code Ann. art. 1436-3 (1971) wherein it declared junked vehicles visible to the public to be

a public nuisance. See State v. Spartan's Industries, Inc., supra.

The judgment of the trial court is reversed. The trial court's injunction against the enforcement of City of Houston Ordinance No. 71–825 is dissolved and judgment is hereby rendered declaring such Ordinance to be valid and enforceable.