**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00027-CV**
_____

**HENRY LABRIE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-206,111**
_____

**MEMORANDUM OPINION**

In this accelerated appeal, Henry LaBrie appeals a temporary injunction granted by the trial court in favor of the State of Texas. On appeal, LaBrie challenges the injunction arguing the terms are overly broad and beyond that which the State had properly pleaded, and the State did not present sufficient evidence of probable right to recovery and harm or damages to be entitled to a temporary injunction. We affirm.

# I. Background

LaBrie developed a shopping center (The Silos) abutting the feeder road adjacent to Highway 69 in Jefferson County. In the course of construction, the Texas Department of Transportation (the State or TxDOT) required LaBrie to submit a permit application to gain access via a driveway to the feeder road of Highway 69 and required LaBrie to provide assurance that improvements created on LaBrie's property comply with the State's requirements regarding the safety of the highway system and drainage along the State's right of way. In March 2018, LaBrie submitted a driveway application for one shared-use driveway "abutting US 69[.]"[1]

---

[1] Per TxDOT's online manual, the following applies:

Permits

To obtain a permit to construct a driveway or to revise any existing driveway, the applicant should contact the local District TxDOT office. The applicant shall complete and submit to TxDOT a Form 1058, Permit to Construct Access Driveway Facilities on Highway Right of Way, which must include a description of the proposed work, the applicant's name, mailing address, telephone number and location of the proposed driveway. Applications for permits shall be made by the property owner or their authorized representative, who shall represent all parties in interest. Applications for permits shall be made only for the bona fide purpose of securing or changing access to the owner's property, but not for the purpose of parking or servicing vehicles on state highway rights of way.

No construction work on the driveway shall be undertaken on the right of way until a fully executed driveway permit has been received by the applicant and the applicant has given 24-hour notification to TxDOT.

LaBrie's hydraulic engineers, Mark Whiteley and Associates performed calculations according to industry standards to show the pre-existing flow and the proposed flow with detention and without detention of stormwater runoff from LaBrie's property and determined two stormwater detention areas or ponds were necessary to meet the State's runoff discharge into the State's drainage ditch along Highway 69. The calculations and engineered drawings were submitted to TxDOT on behalf of LaBrie to be approved for a driveway permit. The application was approved by TxDOT as a "shared use" driveway. In August 2018, TxDOT sent a letter of noncompliance to LaBrie after an inspection revealed that he had not constructed the required detention areas on his property per his engineers' recommendation as presented in the construction plans and per the TxDOT driveway permit approval dated March 15, 2018. As a result, surface water moves unmitigated across the parking lot and driveway directly into TxDOT US Highway 69 right of way and drainage ditch that violates the TxDOT drainage policy dated May 25, 2017,

---

A driveway must be constructed in accordance with a fully executed driveway permit and all applicable regulations. A TxDOT inspector will review the driveway construction to determine if it is acceptable or if modifications are needed. A driveway will be considered an authorized permitted driveway installation only after construction has been completed and the construction has been determined to be satisfactory to TxDOT.

*See* TEX. DEP'T OF TRANSP., MANUAL NOTICE: 2011-1 (2011), http://onlinemanuals.txdot.gov/txdotmanuals/acm/manual_notice.htm.

3

which was referenced by LaBrie's engineers. LaBrie had also constructed another building and parking lot on the property without submitting construction plans to TxDOT as required.

A second engineer for LaBrie, Soutex Surveyors and Engineers, met with TxDOT concerning the corrective actions needed on the property, and TxDOT granted additional time for LaBrie to submit an acceptable hydraulic plan. The second Driveway Permit Application is dated February 4, 2019.[2] The permit application included construction plans from Soutex Engineers on behalf of LaBrie. TxDOT issued the driveway permit for construction on February 15, 2019.

LaBrie constructed more buildings, parking lots and driveway connections to Highway 69 frontage road, including a water amenity pond, but failed to construct detention ponds presented in the construction plans of February 4, 2019, to correct the previous concerns and for the additional buildings and parking lots. Site drainage from LaBrie's improved property also flows unmitigated into TxDOT's right of way and drainage ditch for Highway 69.

In response to LaBrie's noncompliance, the State filed a petition requesting an ex parte temporary restraining order and temporary and permanent injunction enjoining LaBrie from further development not in compliance with the permit and

---

[2] This document was titled "Commercial and Industrial Driveway Access Request Form."

requiring LaBrie to comply with the permit requirements. In its pleading, the State alleged four causes of action, a violation of Texas Water Code section 11.086, negligence, trespass, and nuisance. The State's petition was supported by and included an affidavit by engineer Kenneth J. Wiemers. In his affidavit, Wiemers avers, in part,

> [] The TxDOT permit requires compliance with TxDOT Drainage Facility Policy, specifically outlined under the section "Developer's Outfall into a TxDOT Drainage Facility Policy[.]"
>
> . . .
>
> [] . . . the Developer has failed to construct stormwater detention ponds and restrictors on the subject property in accordance with the Developer's construction plans and in accordance with the approved TxDOT driveway permit.
>
> [] The Developer has already constructed several buildings and parking lot improvements on the subject property without a proper drainage and detention system to mitigate excessive surface flows into TxDOT roadside ditch along the Eastex Freeway (US 69). The inadequate drainage and detention system in the subject property places a significant safety risk to the traveling public along Eastex Freeway (US 69) during normal and heavy rainfall events.

In response, LaBrie asserted that the State is "seeking to divert its water onto LaBrie's land…where he has developed The Silos." According to LaBrie, the State made roadway improvements that changed the flow of water and increased the water flow towards his property. LaBrie disputes that he did not build the driveway structures according to the permit's language, contending "driveway facilities" is not defined by the State. Additionally, LaBrie contests the State's claim that a 24-inch

5

pipe to carry water is insufficient, insisting the State must conduct a "hydrology study to determine if there has been an increase in the rate of water." LaBrie also disputes that traveling on the roadway is a danger to public, noting that the State increased the speed along that road.

On January 13, 2021, the trial court held a hearing on the State's petition for a temporary injunction. At the hearing, two witnesses testified for the State, Kenneth Wiemers and Melvin Spinks. LaBrie did not call any witnesses.

## A. Testimony of Kenneth Wiemers

Wiemers testified that he is a civil engineer employed by TxDOT. Wiemers explained that having proper drainage is "very, very important[.]" He stated that if you do not regulate drainage, excess water causes roadways to flood, causing a safety and mobility issues for motorists using the highways. Wiemers noted that because of the potential for harm, the State wants to ensure that drainage components are a part of the drainage and driveway permits issued by the State. He explained that after a landowner submits a permit to the TxDOT, he meets with a landowner in the field and evaluates the site for safety issues. He testified the goal of the State is to "have safe ingress and egress to the highway and to make it to where all developers can have that good, safe egress and ingress and balance safety, future maintenance of the highways, and economic development and mobility of people getting up and down the highway." If everything is in compliance, the permit process "can be [] pretty

6

fast[.]" But, if a landowner is in noncompliance, he attempts to meet in the field first to notify the landowner of the noncompliance. If there is still noncompliance after the meeting, TxDOT sends certified mail notifying the landowner of the noncompliance and what needs to be done to correct the problem. According to Wiemers, LaBrie did not comply with the permit application and the construction plans.

> [LaBrie] built the driveway tie-in, he built the parking and the building shown, and then began building a second building and paved over the area where the detention pond was going to be built. So, he has built above and beyond the impermeable area that was in this permit and did not show any intent to construct the ponds.
>
> . . .
>
> That has not been approved.

Wiemers testified that a redesign and a second permit was issued to mitigate the additional runoff and "try to bring the [s]ite into compliance." LaBrie hired a new engineer who redesigned the drainage on the property. The new design plans included two new driveways "if all of the development was built according to this permit and the locations of the pond and drainage was accounted for and no impact was found to the State's system." The State approved the new permit. However, LaBrie failed to construct the stormwater detention ponds suggested by his engineers and approved and made a part of the second permit. Wiemers stated that LaBrie has increased runoff water to the State highway drainage system.

7

Wiemers testified that although LaBrie may have installed an underground detention and landscaping and rock features on the property, his opinion remained that LaBrie is "directly discharging unmitigated water flow to the State; and that is increasing[.]" Wiemers stated that LaBrie's increased flow impedes the safety of the highway and the traveling public.

Wiemers confirmed that TxDOT is currently widening highway 69 at an area by The Silos. He stated the State is building detention ponds to address any increased water flow resulting from the widening of the highway and TxDOT is "building that according to our own licensed engineers and how they have designed it and are following our plans, unlike Mr. LaBrie who doesn't follow the recommendations of his engineers or build his permits or promote, you know, trust that he is going to build according to his permits."

Defense counsel presented Wiemers with a document that demonstrated LaBrie's land was covered with trees before the development. In response, Wiemers explained that LaBrie's development removed twenty acres of trees redirecting the flow of water and added,

> And, Judge, I want you to see that this document is going to show you that the area of Highway 69, all the development area on either side was trees; and as you know, trees are like sponges. They soak up water. And when you cut those trees down and you pour concrete and you allow that concrete to run straight to the highway's ditch, it increases flow. That increased flow is going to flood the highway frontage roads and cause a safety issue. This document is a good representation on why we need to regulate access. We need to be able to enforce our drainage

8

policies and show that detention ponds have to be built because if all of the area on this is developed unimpeded, then all the highways are going to flood at the slightest rain event. We are consistent in our application of these, and I beg you to please give us our injunction so that Mr. LaBrie must come in compliance with his permits and mitigate this increased runoff.

While Wiemers acknowledged he has not done any calculation relating the capacity of the water feature, he explained a water amenity built by LaBrie was simply a "water feature" that "holds permanently surface water and releases it unregulated and unmitigated into the State's surface." In contrast, an "engineered pond" or detention pond has a predetermined capacity and regulatory outfall structure that controls the water flowing into the State's ditch. Wiemers disputed LaBrie's claim that the "water feature" substitutes for detention ponds, explaining that "[the water feature is] going to pass through whatever water comes into it in equal proportions," stating the water, either from the development or the sky, remains "unregulated and unmitigated[.]" He testified that the water feature is not shown on any engineered construction plans submitted to the State, and while some water from the development flows into the feature, "[a]ll of the parking area and half of the buildings flow directly to the State ditch." Wiemers stated that even if LaBrie did not develop his property any further, he would still have to mitigate the "impact that he caused to the State up to this point[.]"

9

## B. Testimony of Melvin Spinks

Melvin Spinks testified that he is President and CEO of CivilTech Engineering. He stated that CivilTech Engineering is a consulting engineering firm and that he has over thirty years of experience "primarily in the fields of drainage and hydrology and hydraulics." He explained that he was retained by the State to evaluate the "drainage situation" at The Silos in a pre- and post-developed condition. He compiled his opinions into a report after he visited The Silos in November 2020. The report was admitted as evidence at the temporary injunction hearing. Spinks explained that LaBrie's property is expelling water in excess of the allowable amount under the permits.

> [W]e have been talking about…the effects of today; and from a drainage perspective, their engineer, their recommendation was to follow the TxDOT's policy, which is all engineers in any development; and there's an allowable discharge into the State's ditch. And in this particular exhibit, the calculation that we made on what was constructed today was the developer would be allowed to discharge 6.2 cfs, which is cubic feet per second, of water. The design form requirement by TxDOT policy stipulates that you have to calculate with all the pavement how much discharge would actually go into the ditch. And as you can see in this picture here, there's 25.3 cubic feet per second. So, in excess of 19 cubic feet per second of water being discharged into the TxDOT ditch.
>
> The yellow line there refers to the drainage area up to the 4-by-3 culvert. The 4-by-3 culvert, according to record drawings presented by TxDOT and confirmed by their engineer -- the defendant's engineer, there's about 18 acres draining to that existing 4-by-3 culvert. It has a designed capacity of about 42 cfs, cubic feet per second.

When you add the 25 -- since there's no detention mitigation in place on the tract, we add the 25 to the rest of the yellow area upstream draining to it, you get about 60 cubic feet per second of water at the intersection near Tram Road and US 69 frontage road. That presents a safety issue. Clearly it turns the capacity -- the overtopping into Tram Road there and also the additional unmitigated water in the ditch that could possibly affect the southbound frontage road as well.

So, the developer's engineers both, as Mr. Wiemers said, recommended this mitigation be in place in accordance with policy; and I feel as an expert as well that today the site as constructed does not have the proper detention mitigation. [] I'm sure I'll be asked the question did I see the pipe, did I see those manholes out there. Yes, I did. No, they, in my opinion, would not be considered detention for the site nor does the amenity pond that shows up there on the left-hand side at the end of the pavement present itself as a detention pond.

Spinks opined that LaBrie has not constructed anything that acts as a water detention element on his property. He also agreed that if LaBrie did not develop the land any further, he would still need to mitigate the water flow on the property in its current development.

Spinks believes the engineered plans attached to the second permit are fatally flawed as

there's no engineering to how they're going to redirect this unmitigated surface flow all the way over to the south there to that proposed pond. Clearly, we can speculate today that maybe the defendant will put a storm sewer system in, maybe they will redo the pavement; but at this time it's unclear how he intends, through his engineer, to really redirect the water to that future pond.

He stated LaBrie would have to dig up a significant amount of concrete in the current parking lots of his shopping center to put in the detention ponds as required in the

11

permits. Spinks concluded that LaBrie's construction has created a harmful safety hazard to the traveling public by an increased runoff of water during normal and heavy rainfall. During cross-examination, Spinks conceded that he was not aware of any physical damage to the State's property that had occurred from any development of The Silos.

After the hearing, the trial court granted a temporary injunction against LaBrie. In its Amended Order Granting Plaintiff's Temporary Injunction, the trial court found that

> The State has shown that Defendant, who owns the property located at 10465 Eastex Freeway, Beaumont, Texas, 77708, is discharging his development's water into and onto the State's property immediately adjacent without permission and in violation of the State's outfall policy and the approved driveway permit applications Defendant submitted. This discharge creates a[n] unapproved net increase in the water entering into the State's drainage improvements and roadway. The State has also shown that the current engineered plans submitted to the State do not remedy the drainage and detention deficiencies on the Defendant's property. Defendant's actions support the State's pleaded causes of actions against him of negligence, trespass, nuisance, and violation of Texas Water Code § 11.086. The State would suffer an irreparable injury if a temporary injunction ordering Defendant to remedy drainage and detention deficiencies on the Defendant's property is not issued.

The injunction prohibits LaBrie from further developing The Silos and mandates that he remedy the current drainage and detention deficiencies by submitting an engineered hydraulic plan to show compliance with the State requirements or, failing

12

to do so, the State would be allowed to remove the offending driveway. LaBrie timely filed this appeal.

## II. Standard of Review

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citations omitted). To obtain a temporary injunction, an applicant must show: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.— Houston [1st Dist.] 2011, no pet.). The temporary injunction applicant bears the burden of production to offer some evidence establishing a probable right to recovery. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (quoting *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961)); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 896-97 (Tex. App.—Dallas 2006, no pet.). The applicant need not establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897.

The decision to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. We review the evidence

13

submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court a resolution of conflicting evidence. *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). However, a temporary injunction will be dissolved if it is based on an erroneous application of the law to the facts. *See Dallas Gen. Drivers, Warehousemen and Helpers v. Wamix, Inc., of Dallas*, 295 S.W.2d 873, 879 (Tex. 1956). Because neither party requested findings of fact and conclusions of law, we presume all findings necessary to support the trial court's order, and we will affirm if it is supported by any legal theory that is sufficiently raised by the evidence. *See Davis*, 571 S.W.2d at 862. If some evidence reasonably supports the trial court's decision, the trial court does not abuse its discretion. *Butnaru*, 84 S.W.3d at 211.

## III. Analysis

### A. Issue One: Pleadings[3]

In his first issue, LaBrie argues that the injunction issued by the trial court is in violation of Texas Rule of Civil Procedure 682 because "the State was awarded injunctive relief for which they have not plead[.]" *See* Tex. R. Civ. P. 682 (requiring petition verified by affidavit containing statement of grounds for relief). LaBrie contends that an injunction can only be granted in limited circumstances and that the State did not plead for the relief the trial court granted because "the State's petition requests that LaBrie be allowed to construct the agreed upon detention." LaBrie argues any additional requirement of the injunction that he submit new engineering plans was not included in the State's petition.

---

[3] Texas Rule of Civil Procedure 683 requires that a trial court set a trial date in a temporary injunction. *See* Tex. R. Civ. P. 683 ("Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought."). The Texas Supreme Court has stated that "[t]hese procedural requirements are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved." *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (citations omitted). Rule 683 does not require a specific date, only requiring that the case be set for a "trial on the merits." *EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 53 n.2 (Tex. App.—San Antonio 2002, no pet.). We agree with our sister court that "rule 683 implicitly requires the injunction to order the cause be calendared on the trial court's docket." *See id.* The trial court set this injunction for a trial on the merits for the December 2021 trial docket. Therefore, it was calendared on the trial's docket in compliance with rule 683. *See id.*; *see also* Tex. R. Civ. P. 683.

15

"In the absence of special exceptions to the applicant's live pleading made at the time the trial court rules on the temporary injunction application, we construe the pleading liberally in the applicant's favor." *Sonwalker v. St. Luke's Sugar Land P'ship. L.L.P.*, 394 S.W.3d 186, 196 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citation omitted). "A party seeking an injunction must be specific in pleading the type of relief sought because courts are without authority to grant relief beyond what is requested." *Wiese v. Healthlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citation omitted). "As the appellate court, our job is not to second-guess a trial court's discretionary decision to issue a temporary injunction. Instead, our job is to make sure that the trial court had the legal authority, and thus discretion, to issue an injunction at all." *Tex. Health Huguley, Inc. v. Jones*, No. 02-21-00364-CV, 2021 WL 5405794, at *8 (Tex. App.—Fort Worth Nov. 18, 2021, no pet.) (citing *Butnaru*, 84 S.W.3d at 204; *SISU Energy, LLC v. Hartman*, No. 02-19-00436-CV, 2020 WL 4006725, at *7 (Tex. App.—Fort Worth July 16, 2020, no pet.) (mem. op.)).

A plaintiff's petition must give adequate notice of the facts upon which the plaintiff bases his cause of action. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). The purpose of this rule is to provide the defendant with sufficient information to allow him to prepare a defense. *See id*. A reviewing court should liberally construe the plaintiff's petition to assert any claim that could

reasonably be inferred from the specific language in the petition. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). However, "a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Id.* (citation omitted); *see also* Tex. R. Civ. P. 47 (setting forth requirements for pleading claims for relief).

In the State's First Amended Petition, the State complained of LaBrie's failure to comply with the construction requirements of his driveway permit after TxDOT approved the construction plans for stormwater runoff mitigation submitted by LaBrie and as set out by LaBrie's engineering firms. In addition to damages, the State sought injunctive relief from the trial court to require LaBrie to comply with TxDOT stormwater drainage regulations, as submitted by LaBrie and approved by TxDOT. As there was testimony that LaBrie constructed his development in ways not in compliance with the approved construction plans and permits, LaBrie was on notice from the State's pleadings that the State was requesting he mitigate his current property and development to reflect what the permits allowed. We overrule this issue.

**B. Issues Two and Three**

Next, LaBrie argues that the State failed to demonstrate a probable right of recovery and imminent harm. "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204 (citation omitted).

**1. Probable Right to Recover**

An applicant shows a probable right of recovery by alleging a cause of action and presenting evidence tending to sustain the cause of action. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.). LaBrie contends the State failed to present sufficient competent evidence supporting a probable right to recover on its claims. According to LaBrie, there is no evidence that he committed trespass, negligence, nuisance, and violations of the Texas Water Code.

To establish a probable right to recovery, the applicant must establish he has a cause of action for which he may be granted relief. *See Walling*, 863 S.W.2d at 57-58.

> [T]he preliminary determination of whether an applicant has shown a probable right to the relief it seeks–that is whether the applicant furnished some evidence tending to support at least one of the legal theories it will urge at trial–entails a thorough review of the law applicable to the parties' claims and defenses.

*Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citation omitted). The State pleaded four causes of action in its

18

first amended petition, negligence, trespass, nuisance, and violations of the Texas Water Code section 11.086. We begin with trespass.

**a. Trespass**

"Trespass to real property is an unauthorized entry upon the land of another[] and may occur when one enters–or causes something to enter–another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). While a property owner has a right to exclude others from his property, the property owner may choose to relinquish a portion of the right to exclude by granting an easement. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). For a plaintiff to recover damages for trespass to real property, he must prove "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). The plaintiff must prove that the defendant exceeded the bounds of any legal rights he may have possessed. *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

"Trespass to real property is defined as an unauthorized entry upon the land of another." *Mathis v. Barnes*, 377 S.W.3d 926, 931 (Tex. App.—Tyler 2012, no pet.). Our sister court of appeals explained that a trespass can happen either by entry

of a person or by "causing or permitting a thing to cross the boundary of the premises." *Id.* at 931. A trespass on to another's land will occur even if there is little or no damage to the land. *Id*. In *Mathis* the trial court affirmed a trespass finding because a road constructed by Barnes had caused water to encroach on land owned by Mathis. *See id.* The record reflected Barnes's awareness of this encroachment and, while no physical damage was done to the land, the encroachment harmed the value of Mathis's land. *See id.*

Similarly, LaBrie worked with the State to provide an engineered drainage plan to obtain two access driveway permits and to regulate the discharge of stormwater from LaBrie's property into the State right of way drainage system. The State sent several letters to LaBrie about his noncompliance, yet he failed to build the water detention features necessary to comply with the permits. Finally, the State presented expert witness testimony that the runoff of water from LaBrie's development directly into the State's drainage system exceeded allowable limits under the permits that were granted, and which failed to comply with the calculations and designs of LaBrie's own engineers. The State's experts further testified the noncompliance and water runoff has created a danger to the travelling public, while acknowledging there was no physical damage to the property. LaBrie presented no

evidence to the contrary. The State successfully demonstrated a probable right to relief under its trespass cause of action.[4]

## 2. Imminent Harm

LaBrie contends that the injunction is invalid because it fails under Texas Rule of Civil Procedure 683. *See* Tex. R. Civ. P. 683. According to LaBrie, "[rule] 683 requires specificity of harm not merely conclusory statements." LaBrie argues that the evidence presented by the State does not demonstrate that there was actual harm to the State's property. LaBrie argues "[t]he harm complained of by the STATE is merely theoretical or speculative…. [and] the STATE has offered no evidence to show that inadequate drainage has damaged or harmed their property in anyway."

Before an injunction generally issues, there must be evidence that injury is threatened. *Dallas Gen. Drivers, Warehousemen and Helpers*, 295 S.W.2d at 879. But the courts have long held that while the right of the citizen to use his property as he chooses so long as he harms nobody is an inherent and constitutional right, the police power of the State cannot be invoked for the abridgment of a particular use of

---

[4] As we have found that the State plead and proved a proper cause of action against LaBrie, we need not address the remaining causes of action plead by the State. A temporary injunction precedes the final determination of the merits of the case. *See NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 867-68 (Tex. App.—Beaumont 2003, no pet.). Because the purpose of a temporary injunction is to preserve the status quo pending a trial on the merits, an applicant for injunctive relief need not prove he will prevail on final trial; rather the applicant need only plead a cause of action and show a probable right to the relief sought. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968).

private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort, or welfare. *City of Houston v. Johnny Frank's Auto Parts Co.*, 480 S.W.2d 774, 776 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (*citing Spann v. City of Dallas*, 235 S.W. 513 (1921)).

At the hearing, Wiemers testified that water was flowing unmitigated from LaBrie's land into the State's ditch. Wiemers stated that LaBrie did not follow the permit plans or build the designated detention ponds, and that any water feature he has constructed does not adequately contain the surface runoff water from The Silos to comply with TxDOT regulations. According to Wiemers, even if LaBrie stops the construction of new buildings, he would still have to mitigate the damage, and the current improvements he has made to the property are currently creating a safety hazard for the traveling public. Similarly, Spinks testified that after visiting The Silos, he prepared a report and found that LaBrie's property is expelling water exceeding the permits' allowable limits. Spinks testified that LaBrie's property is expelling water in "excess of 19 cubic feet per second… discharged into the TxDOT ditch." He noted that a culvert in place is not designed to mitigate that amount of water from LaBrie's property and it is creating a safety hazard for the travelling public on the roadway. He testified that for LaBrie to mitigate the drainage issue, LaBrie would have to dig up and remove a significant amount of concrete.

While LaBrie argues that the State only provided conclusory or speculative evidence of harm, we disagree. The State provided evidence to the trial court by way of two witnesses that LaBrie's construction at The Silos was in violation of his permits and exceeds allowable drainage, and as a direct result, without mitigation, would cause excess drainage to flow into the State's roadway and cause a traveling hazard for motorists on the highway. Therefore, we conclude that the evidence supports the trial court's decision to issue a temporary injunction, and the trial court did not abuse its discretion by issuing the injunction. *See Butnaru*, 84 S.W.3d at 211-12; *Davis*, 571 S.W.2d at 862.

## IV. Conclusion

We hold the trial court did not abuse its discretion by granting the State's request for preliminary injunctive relief. Therefore, we affirm the temporary injunction. Because the other arguments appellant has raised in the interlocutory appeal would not result in greater relief, it is not necessary that we address them. *See* Tex. R. App. P. 47.1.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 28, 2021
Opinion Delivered February 24, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

23